Morris Hershell LUMPKIN, Appellant,

v.

The STATE of Texas, State.

Nos. 2-83-102-CR, 2-83-103-CR.

Court of Appeals of Texas, Fort Worth.

Dec. 13, 1984.

Kahn & Maierson, P.C. and Donald G. Martin, Houston, for appellant.

Mac Smith, Dist. Atty., Weatherford, for State.

Before ASHWORTH, BURDOCK and HILL, JJ.

## OPINION

HILL, Justice.

Morris Hershell Lumpkin was convicted of murdering Louis Preston Cripps and his wife, Imogene Cripps, and was sentenced to two consecutive life sentences in the Texas Department of Corrections.

He appeals his conviction, arguing that: (1) there was insufficient evidence to sup-

port the jury verdict; (2) his oral statement to a police officer should not have been admitted into evidence; (3) he should have been allowed to argue and charge the jury on the law of circumstantial evidence; (4) the prosecutor improperly implied that the defense did not "go by the rules"; and (5) the two life sentences should run concurrently, not consecutively.

We affirm the conviction.

Appellant's first three grounds of error involve the sufficiency of the evidence. In reviewing the sufficiency of the evidence in either a direct or circumstantial evidence case, we must view the evidence in the light most favorable to the jury's verdict and consider whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Houston v. State*, 663 S.W.2d 455, 456 (Tex.Crim.App.1984); *Wilson v. State*, 654 S.W.2d 465, 471 (Tex. Crim.App.1983, opinion on rehearing). A conviction cannot be sustained if the evidence leaves any reasonable doubt as to the guilt of the accused. *Jackson v. Virginia*, 443 U.S. 307, 317–18, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979). Thus, it follows that a conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the defendant. *Johnson v. State*, 673 S.W.2d 190, 195 (Tex.Crim.App.1984); *Wilson*, 654 S.W.2d at 471.

The evidence in this case can be summarized as follows:

(1) Appellant, a resident of Jolleyville, near Austin, had recently filed for bankruptcy, and was trying to sell his former home in Wichita Falls.

(2) One of appellant's friends in Wichita Falls arranged for Cripps, a house painter, to paint appellant's house and saw Cripps working on the house. After Cripps finished the job, he twice tried to contact appellant through the friend, on February 12th and 14th. On the 14th, the friend gave appellant's unlisted phone number to Cripps.

(3) Appellant admitted to the police that he owed Cripps money, and that he spoke with Cripps on the phone on the 14th, and that he met Cripps and his wife later in the day on the 14th.

(4) Appellant also admitted that he was driving his blue and white Bronco on that day and that Cripps and his wife were driving their white pickup truck. The truck had a white tool box mounted in the back and personalized plates reading "Cripps".

(5) Cripps and his wife were shot to death sometime between 5:30 and 7:30 p.m. on the 14th, according.to the medical examiner.

(6) Appellant was identified in court by two college students, who testified that appellant was sitting in a parked white pickup truck at 7:45 p.m. on a road next to Lake Weatherford, with an empty blue and white Bronco parked about 20 yards away. The interior light was on in the pickup. The two students also identified a photograph of appellant as a photograph of the man they saw that night. In the photograph, appellant has a beard and a receding hairline and is wearing glasses.

Three other college students also saw the Bronco and the pickup with a man inside, but were unable to identify appellant in court. One of the students said the man in the pickup had glasses and a receding hairline, one noticed a beard and glasses, and one could say only that the man in the pickup was white.

(7) At 8:15 p.m., a partially submerged white pickup truck was discovered in Lake Weatherford, just out from the spot where appellant had been seen one-half hour earlier. The Bronco was no longer at the scene.

(8) The bodies of Louis and Imogene Cripps were found in the pickup, mostly on the passenger side, on the seat and on the floor. Cripps' wallet was missing and his trouser pockets were turned inside out.

(9) The front of the pickup had marks indicating that it had been towed. Appellant had had a tow bar in the Bronco on one previous occasion.

(10) Appellant, in his statement to the police, claimed that he agreed to meet Cripps in Stephenville at 2:30 p.m. but went on to Wichita Falls when Cripps did not show up on time. Appellant said he was in Wichita Falls at 5:30 or so, though he met no one he knew, and then by chance as he returned home towards Austin he met Cripps and his wife in Jacksboro at 7:30 p.m. He paid Cripps and saw them drive off toward Wichita Falls at 8:00 p.m.

(11) Between 3:00 and 5:00 p.m., someone with appellant's name rented a storage unit in appellant's name near appellant's home in Jolleyville. ·

From these facts, including the contradiction of appellant's alibi, we find that the jury could find the essential elements of the crime.

Appellant, however, contends that there are facts which raise a reasonable hypothesis that he is not guilty.

(12) There was no physical evidence to connect appellant with the victims, their pickup or the place where the body was found. No fingerprints were found in the pickup and all soil and clothing samples were negative. Blood covered much of the front seat of the pickup, yet no blood was found on any of appellant's clothes or in his Bronco. There was no evidence to show that appellant had a tow bar with him that day, and the only gun found among his belongings did not fire the fatal bullets.

(13) The police did not investigate anyone else except appellant.

(14) Three of the five college students were unable to identify appellant. Two of the five disagreed on shirt color and at least two on hair color.

(15) There was no direct evidence of the actual crime. No one heard any gunshots or saw the pickup being driven or towed to the lake area or into the lake.

(16) According to appellant, Cripps was carrying $1,600 in cash after being paid. The cash was not found on the bodies or in the pickup.

■ After considering all the evidence listed above, we find that any hypothesis other than appellant's guilt is not reasonable. Any other hypothesis would have to include a bearded man with receding hairline and glasses, very similar or identical to appellant in appearance and driving a very similar or identical blue and white Bronco, who had a motive to murder Cripps and his wife, and who did murder them at a time when appellant had no credible alibi. We decline to find any such hypothesis reasonable. Our duty on appeal is not to rule out every imaginable hypothesis, but instead to insure that the evidence rules out every reasonable hypothesis except the guilt of the defendant. *Wilburn v. State,* 636 S.W.2d 771, 776 (Tex.App.—Corpus Christi 1982, no pet.).

■ We hold that there was sufficient evidence for the jury to find appellant guilty beyond a reasonable doubt, and we therefore overrule his grounds of error numbers one, two and three. *See Stanley v. State,* 664 S.W.2d 746 (Tex.App.—San Antonio 1983, pet. ref'd).

■ In his ground of error number four, appellant claims that the trial court erred in admitting into evidence a voluntary, oral statement he made to James Rutledge, an investigator for the District Attorney's office. Appellant contacted the District Attorney's office and set up the interview with Rutledge. Appellant arrived with an attorney and agreed to talk after he was given his *Miranda* warnings. His voluntary, oral statement was non-custodial and was therefore admissible under TEX.CODE CRIM.PROC.ANN. art. 38.22 (Vernon 1979). *Stone v. State,* 583 S.W.2d 410 (Tex.Crim.App.1979). Since the appellant was not in custody at the time his oral statement was made, the restrictions that art. 38.22 places on the admissibility of oral statements made while in custody do not apply. Appellant's statement was admissible. We overrule appellant's ground of error number four.

■ By grounds of error numbers five and six, appellant urges us to follow the

dissenting argument in *Hankins v. State*, 646 S.W.2d 191, 199 (Tex.Crim.App.1983, opinion on rehearing), and hold the trial court in error for refusing appellant's request for a separate jury charge on circumstantial evidence and for a chance to argue to the jury on the level of proof required in a circumstantial evidence case. We decline to follow the dissent in *Hankins* and agree with the majority of the Court of Criminal Appeals that a jury need only be properly instructed as to the State's burden of proof, the presumption of innocence, and the requirement that an acquittal be entered if there exists a reasonable doubt as to the defendant's guilt. The trial court did not err, and we overrule appellant's ground of error numbers five and six.

In ground of error number seven, appellant complains of improper jury argument.

The defense counsel made the following statement during closing argument:

So I showed him a report, a copy of which was given to me by the District Attorney. He read that report to you, and it says, totally conclusive, that this gun did not fire the bullet submitted to the lab. No question about it. That gun was not in Weatherford. Okay. They got a weapon. Wasn't the weapon that killed these folks so they didn't want to mention that. No, we are not going to tell you anything about that. I had to bring it out. They said they searched Mr. Lumpkin's house, got all kinds of clothes and boots and stuff, submitted them to the lab. Did they tell you about that? No, they didn't tell you about that because what did come back made him read it in the record, no evidence of any soil samples that matched the sample of the scene of the crime. No evidence of any blood on any of the clothing.

As soon as the prosecutor opened his closing argument, he said, referring to defense counsel,

He starts talking about this Mac 10 machine gun that is down there and all of these clothes and boot. Hey, they— you didn't tell this jury, Mr. Smith, you didn't tell the jury one thing about that,

not one thing. The clothes, this machine gun, or anything else. You tried to hide it; didn't you? You didn't tell them anything about it. Well, we can't positively connect any of that back to the case, and the rules say if we can't connect it up, we can't even mention it. We are not trying to hide anything, but we have got to go by the rules. Thank goodness somebody has to go by the rules.

Defense counsel objected, and the jury was instructed to disregard the remark.

■ We find that the trial court's instruction to the jury was sufficient to cure any error. *Hudson v. State*, 675 S.W.2d 507, 511 (Tex.Crim.App.1984). Appellant's ground of error number seven is overruled.

In his last ground of error, appellant argues that the two life sentences should run concurrently, not consecutively. He claims that TEX.PENAL CODE ANN. sec. 3.03 (Vernon 1974), which mandates concurrent sentences, should control over TEX. CODE CRIM.PROC.ANN. art. 42.08 (Vernon 1979), which leaves the decision to the discretion of the trial court.

■ Section 3.01 of the Penal Code limits the application of Chapter 3 of the Code to offenses encompassed by Title 7 of the Texas Penal Code, that is, Offenses Against Property. *Smith v. State*, 575 S.W.2d 41 (Tex.Crim.App.1979). If sec. 3.03 does not apply, then the trial court retains the right under art. 42.08 to cumulate the sentences. *Smith*, 575 S.W.2d at 41. Appellant's ground of error number eight is overruled.

We affirm the judgment.