NUMBER 13-07-00712-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


DALE RAYMOND CRUNK, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 138th District Court of Cameron County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Yañez and Wittig


Memorandum Opinion by Justice Wittig (1)

 

 Dale Raymond Crunk, appellant, appeals his conviction for intentionally causing
serious bodily injury to Javier Ortega causing his death and intentionally or knowingly
concealing Ortega's body. In five issues, appellant argues double jeopardy, error by not
granting an instructed verdict, impermissible sentencing by imposing consecutive
sentences, exclusion of his expert pathologist's testimony, and failure to instruct on sudden
passion in connection with the tampering issue. We will affirm as modified. 

 1. Background

 According to appellant, his trial defense counsel appears to have conceded that
appellant killed his step son, Ortega. The issue at trial was why the homicide occurred and
why appellant buried the body. The evidence showed there was a fight and Ortega hit
appellant many times with a pipe, following an argument about money. Appellant briefly
secured the pipe from Ortega and hit him once. Appellant continued to try to wrest the
pipe and the two fell down. Appellant then choked Ortega until he did not move. Appellant
testified he passed out on top of Ortega. The State's pathologist Dr. Norma Jean Farley
found no conclusive evidence of strangulation, given the youth of Ortega and
decomposition of the body. Farley opined the cause of death to be "homicidal violence
for a reason." Appellant admitted to burying the body after he panicked.

 2. Double Jeopardy

 In his first issue, appellant maintains that he should not have been further
prosecuted after his first jury was empaneled, sworn in, then dismissed. After his first jury
was sworn in, the prosecution noted that a juror was impaneled and sworn who should not
have been there. Apparently, the clerk misinterpreted a strike by the defense that was
changed to "it was okay." As a result, the twelfth juror, Mary Ann Gallegos, (originally
number 42) should have been seated and was not. Instead, juror number 44, Ignatio
Jiminez, was seated and sworn. Gallegos was excused from the panel but was still
available to serve and was present in the courtroom when the error was discovered by the
State. The State initially objected, stating that an error was made, the error invalidated the
panel, and there should be a new panel. The prosecutor added, "I really have no interest
in doing so. However, I don't see that we have an alternative." The State also objected
to the alternates. The trial court ultimately concluded there to be two approaches to the
problem. One would be to include Gallegos as the twelfth juror, "or just call another jury
tomorrow morning." The State offered a third alternative involving re-striking the juror
alternates to which the defense objected. The trial court asked both the State and
appellant: "Both of you are going to object? One solution or the other?" Defense counsel
replied: "Yes." The State made no reply.

 For the first time on appeal, appellant states that seating a new jury panel or a
second trial was barred under double jeopardy principles because jeopardy attached when
the first jury was impaneled and sworn in.

 3. Standard of Review

 We will review the trial court's finding of manifest necessity for a mistrial by applying
an abuse of discretion standard. Arizona v. Washington, 434 U.S. 497, 509-14 (1978); Ex
parte Little, 887 S.W.2d 62, 66 (Tex. Crim. App. 1994); Ex parte Williams, 870 S.W.2d 343,
346 (Tex. App.-Fort Worth 1994, pet. ref'd). A mistrial ordinarily requires the balancing of
two competing interests: the defendant's right to have the trial completed, and the public's
interest in fair trials designed to end in just judgments. Ledesma v. State, 993 S.W.2d 361,
364 (Tex. App.-Fort Worth 1999 pet. ref'd.); Ex parte Homann, 780 S.W.2d 933, 935 (Tex.
App.-Austin 1989, no pet.)

 The defendant's "valued right to have his trial completed by a particular tribunal" is
now within the protection of the constitutional guarantee against double jeopardy, since it
is that "right" that lies at the foundation of the federal rule that jeopardy attaches when the
jury is empaneled and sworn. Crist v. Bretz, 437 U.S. 28, 36 (U.S. 1978). An exception
to this rule is made if the defendant consents to a retrial, or if a retrial before a new jury is
mandated by some form of manifest necessity. Torres v. State, 614 S.W.2d 436, 441
(Tex. Crim. App. 1981) (citations omitted).

 Because of the fundamental nature of double jeopardy protections, a double
jeopardy claim may be raised for the first time on appeal, or even for the first time by
collateral attack, when the undisputed facts show the double jeopardy violation is clearly
apparent on the face of the record and when enforcement of usual rules of procedural
default serves no legitimate state interests. Gonzalez v. State, 8 S.W.3d 640, 643 (Tex.
Crim. App. 2000).

 4. Discussion

 Appellant contends, and we agree, that a double jeopardy claim may be raised for
the first time on appeal, when the undisputed facts show that a double jeopardy violation
is clearly apparent on the face of the record and when enforcement of the ususal rules of
procedural default serve no legitimate state interest. See id. The trial court, and
apparently the State, knew or should have known of a potential double jeopardy issue. (2) 

 The State contends on appeal that appellant consented to the dismissal of the first
panel or that the dismissal was prompted by appellant's objection at trial. The record
shows otherwise. The appellant clearly objected when the trial court offered to either seat
the erroneously excused juror Gallegos "or just call another jury tomorrow morning." The
trial court inquired whether both sides would object to either solution. The defense
responded: "Yes." The defense also objected to the prosecution's alternative to seat
Gallegos and then both sides "select the two alternates." As we understand the
prosecution's offer, it wanted to re-exercise its peremptory challenges knowing the pool of
alternates after the proper seating of Gallegos. 

 In addition, the State argues that the appellant impliedly consented to be retried.
Consent need not be expressed, but may be implied from the totality of circumstances
attendant to a declaration of mistrial. Torres, 614 S.W.2d at 441-42. While we agree with
the stated legal principle, the facts do not support this conclusion as we discussed above.

Without citing any authority, the State argues appellant does not demonstrate how the
enforcement of the usual rules of procedural default serve no legitimate purpose. See Tex.
R. App. P. 38.1(i); 38.2(a)(1). 

 The State notes that in addition to consent to retrial, another exception to the rule
is found where it is mandated by some "manifest necessity" citing, Torres, 614 S.W.2d at
442. Appellant counters that the State waived any error in not seating Gallegos by failing
to object prior to the jury being sworn in. Thus, the State created the problem by failing to
timely object. However, as the State notes, in certain circumstances double jeopardy is
not violated unless the State's conduct giving rise to a mistrial motion was "intended to
goad" the defendant into moving for a mistrial, citing Oregon v. Kennedy, 456 U.S. 667,
675-76 (1982). According to the State, retrial is barred only if the prosecutor intentionally
caused a mistrial, citing Ex parte Lewis, 219 S.W.3d 335, 358 (Tex. Crim. App. 2007)
(defendant's valued right to complete his trial before the first jury would be a "hollow shell"
if retrial were permitted after the prosecution, through its conduct, intentionally precipitated
a mistrial; the question is whether the defendant retained primary control over the course
to be followed) (citations omitted). The record does not demonstrate that the State
intentionally precipitated a mistrial. Nor is there a showing that the defendant retained
primary control resulting in the mistrial. See id. Both sides agree that the error in not
seating Gallegos was an administrative oversight by the clerk's office. The error affected
both the State and appellant. See Tex. Code Crim. Proc. Ann. 35.26 (clerk shall call off
the first twelve names on the lists that have not been stricken) (emphasis added.)

 5. Manifest Necessity

 "For at least 175 years, America's courts have had the sound discretion to discharge
a jury before it has reached a verdict whenever a court concludes, after considering all of
the circumstances, that there is a manifest necessity to declare a mistrial to prevent the
ends of public justice from being defeated." Ledesma, 993 S.W.2d at 365 (citing Perez,
22 U.S. at 580; Harrison v. State, 788 S.W.2d 18, 22 (Tex. Crim. App. 1990)). An
exception to this rule prohibiting the re-trial of a defendant exists when the defendant
consents to a re-trial or a mistrial is mandated by "manifest necessity." Ex parte Fierro, 79
S.W.3d 54, 56 (Tex. Crim. App. 2002) (citing Washington, 434 U.S. at 509-14). We have
determined that appellant did not consent to a mistrial or re-trial. We therefore turn to the
question of manifest necessity.

 Manifest necessity exists when the circumstances render it impossible to arrive at
a fair verdict, when it is impossible to continue with trial, or when the verdict would be
automatically reversed on appeal because of trial error. Somerville, 410 U.S. at 462-64. 
A trial judge should make more than a perfunctory recitation of the alternatives before
granting a mistrial, and should carefully and deliberately consider which of all the
alternatives best balances the defendant's interest in having his trial concluded in a single
proceeding with society's "interest in fair trials designated to end in just judgments." Ex
parte Fierro, 79 S.W.3d at 56-57 (citing Washington, 434 U.S. at 516.) Otherwise,
consideration of less drastic alternatives equates to little more than a pro forma exercise
to mask the trial judge's preferred course of action. Id. Accordingly, where the trial judge
fails to explicitly or implicitly rule out a less drastic alternative in favor of granting a mistrial,
he has abused his discretion. Id. 

 In reviewing the propriety of the trial judge's exercise of his discretion, the United
States Supreme Court, following Mr. Justice Story, scrutinizes the court's action to
determine whether, in the context of that particular trial, the declaration of a mistrial was
dictated by "manifest necessity" or the "ends of public justice." Somerville, 410 U.S. at
462-64. "The interests of the public in seeing that a criminal prosecution proceed to
verdict, either of acquittal or conviction, need not be forsaken by the formulation or
application of rigid rules that necessarily preclude the vindication of that interest." Id. 

 In Somerville, the high court lists multiple examples of the application of the manifest
necessity test. In United States v. Perez, 22 U. S. 579, (1824), and Logan v. United
States, 144 U.S. 263 (1892), the United States Supreme Court held that manifest necessity
justified the discharge of juries unable to reach verdicts, and, therefore, the double
jeopardy clause did not bar retrial. Somerville, 410 U.S. at 462-64; Cf. Keerl v. Montana,
213 U.S. 135 (1909); Dreyer v. Illinois, 187 U.S. 71 (1902). In Simmons v. United States,
142 U.S. 148 (1891), a trial judge dismissed the jury, over defendant's objection, because
one of the jurors had been acquainted with the defendant, and, therefore, was probably
prejudiced against the government. Somerville, 410 U.S. 458, 463. It was held that the
trial judge properly exercised his power "to prevent the defeat of the ends of public justice." 
Id. In Thompson v. United States, 155 U.S. 271 (1894), a mistrial was declared after the
trial judge learned that one of the jurors was disqualified, having been a member of the
grand jury that indicted the defendant. Similarly, in Lovato v. New Mexico, 242 U.S. 199
(1916), the defendant demurred to the indictment, his demurrer was overruled, and a jury
sworn. The district attorney realized that the defendant had not plead to the indictment
after the demurrer had been overruled, moved for the discharge of the jury and
arraignment of the defendant for pleading; the jury was discharged, the defendant plead
not guilty, the same jury was again impaneled, and a verdict of guilty rendered. Somerville,
410 U.S. at 464. The double jeopardy clause did not bar reprosecution. Id. 

 We contrast decisions where no manifest necessity was found. In Torres, the trial
judge granted a mistrial indicating his belief that a witness had been intimidated into
changing his testimony; his conclusion, however, was unsupported by the evidence. 
Torres, 614 S.W.2d at 443. Thus, no manifest necessity was present. Id. In Ex parte
Hubbard, 798 S.W.2d 798, 799 (Tex. Crim. App. 1990), the indictment charged the
defendant with two misjoined offenses. Hubbard moved to compel the State to elect
between the offenses after the jury was impaneled. In response, the State moved to
dismiss the jury because they had been informed of both offenses during voir dire. Id. The
trial judge granted the State's motion and declared a mistrial. Id. The court held there was
no manifest necessity for the mistrial because there was an alternative available to
dismissing the jury, namely, the State could have elected between the counts. Id. at 800. 
In Little, although the jury was empaneled and sworn, due to the lateness of the hour, trial
on the merits did not commence until the following day. Ex parte Little, 887 S.W.2d at 63. 
 On the morning trial on the merits was to commence, one juror failed to arrive on time. 
Id. After waiting approximately three hours, the trial judge declared a mistrial based on
manifest necessity. Id. at 63-64. The record demonstrated that the trial judge failed to
consider a number of alternatives in lieu of declaring a mistrial, including granting a
continuance or issuing a writ of attachment. Id. at 66-67. The court concluded that
because the trial judge failed to consider and rule out the less drastic alternatives to a
mistrial, the record did not support his finding that manifest necessity existed, and
consequently, the trial judge abused his discretion. Id. at 67.

 In Brown, a witness for both the State and the defense was not available to testify
in order and was unavailable on certain dates. Ex parte Brown, 907 S.W.2d 835, 841 (Tex.
Crim. App. 1995). The defense offered to allow the witness to testify out of order or
substitute the witness's supervisor. Id. The court held that because less drastic
alternatives were available, there was no manifest necessity to declare a mistrial. Id. 
Therefore, the trial judge necessarily abused his discretion in declaring a mistrial. 
Accordingly, appellant's retrial was jeopardy barred. Id. at 844. In Fierro, a juror was
erroneously thought to be related to the defendant and challenged for cause. Ex parte
Fierro, 79 S.W.3d at 57. The challenged juror was not, in fact, challengeable for cause
because of consanguinity with appellant. Id. Therefore, the trial court erred in excluding
her for that reason and granting a mistrial based upon manifest necessity. Id. 

 A defendant charged with a criminal offense has the state constitutional right to a
jury. Tex. Const. art. I, § 10; see also Tex. Const. art. 1.05 (Vernon 1977). A jury in
a criminal district court is defined as twelve persons. Tex. Const. art. V, § 13 Tex. Code
Crim. Proc. Ann. 33.01 (Vernon 1989). 

 As the reviewing court, we must determine whether the trial judge acted irrationally
or irresponsibly and whether the mistrial order reflects the exercise of sound discretion.
Ledesma, 993 S.W.2d at 365 (reviewing the trial court's finding of manifest necessity for
mistrial by applying an abuse of discretion standard); see also Parrish v. State, 38 S.W.3d
831, 835 (Tex. App.-Houston [14th Dist.] 2001, pet. ref'd). Moreover, if the record shows
that the trial judge exercised sound discretion in finding a manifest necessity for a retrial,
the judge's sua sponte declaration of a mistrial is not incorrect just because the reviewing
court might have ruled differently. Washington, 434 U.S. at 514-16; Ledesma, 993 S.W.2d
at 365.

 As we discussed supra, the trial court clearly considered the alternatives, including
the seating of the correct twelfth juror Gallegos, and proceeding without alternates. The
State implicitly rejected the court's offer and the defendant objected. Apparently, the trial
court properly rejected the State's third alternative to re-strike the alternates. The court
obviously did not choose to proceed without the twelfth juror who had been selected by
both parties, Gallegos, number 42. Nor did the court choose to proceed with the juror
mistakenly taken out of order, Jiminez, number 44. Under the unique circumstances of this
case, we cannot say that the trial court abused its discretion by empaneling a new jury.
Washington, 434 U.S. 509-14; Sommerville, 410 U.S. at 462-64.

 6. Instructed Verdict

 In his second issue, appellant contends the trial court erred because it failed to grant
his motion for directed verdict on count three (tampering) after the State's case in chief. 
Specifically, he challenges the element of knowledge of murder or aggravated assault. At
the point of his motion, appellant had not testified. The pertinent code section provides:

 (d) A person commits an offense if the person:

 (1) knowing that an offense has been committed, alters, destroys, or
conceals any record, document, or thing with intent to impair its verity,
legibility, or availability as evidence in any subsequent investigation of or
official proceeding related to the offense; or


 Tex. Penal Code Ann. § 37.09(d)(1). 


 7. Standard of Review

 We treat an issue complaining concerning a trial court's failure to grant a motion for
directed verdict as a challenge to the legal sufficiency of the evidence. Williams v. State,
937 S.W.2d 479, 482-483 (Tex. Crim. App. 1996); Cook v. State, 858 S.W.2d 467, 470
(Tex. Crim. App. 1993). Evidence is legally sufficient when, viewed in the light most
favorable to the verdict, a rational jury could have found the essential elements of the
offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). This
court's duty is not to reweigh the evidence from reading a cold record but to "position itself
as a final, due process safeguard ensuring only the rationality of the factfinder." 
Matamoros v. State, 901 S.W.2d 470, 474 (Tex. Crim. App. 1995); Moreno v. State, 755
S.W.2d 866, 867 (Tex. Crim. App. 1988).

 8. Legal Sufficiency

 After killing his stepson, appellant admittedly placed the body of the deceased into
a goose pen. The early morning of the next day, appellant admits he removed the body
and buried it on a farm. He returned to the body on a third occasion to better bury the
corpse. Appellant admitted in his second statement that he fabricated his initial story to
investigators. In the second statement he said: "I knew that I had killed Jarvi and I did not
want to get in trouble." Multiple photos showed the decomposing body of the deceased. 
Appellant also admitted that he struck the deceased with a pipe on the head and choked
him until he stopped breathing. "I held on to his throat and did not let go." Appellant then
cleaned up the blood from the walls, floor, bricks, work bench, door, and mopped the
kitchen floor. Appellant lied to his wife and friends about the episode.

 Appellant acknowledges that if there is any evidence to support a verdict of guilt, an
issue of fact is considered to be raised and the case will be submitted to the jury, citing
McKenzie v. State, 617 S.W.2d 211, 218 (Tex. Crim. App. 1981) (given the immediate
context in which the statement was made and the circumstances surrounding the
occurrence, an issue of fact was raised that presented a jury question, not a matter of law,
which the court (properly) determined to submit to the jury). Intent may be inferred from
the actions or conduct of appellant. Robertson v. State, 871 S.W.2d 701, 705 (Tex. Crim.
App. 1993); McGee v. State, 774 S.W.2d 229, 234 (Tex. Crim. App. 1989). Establishment
of culpable mental states is almost invariably grounded upon inferences to be drawn by the
factfinder from the attendant circumstances. Lane v. State, 763 S.W.2d 785, 787 (Tex.
Crim. App. 1989). The threshold of proof necessary to support a (jury) finding of an
awareness that such a result is reasonably certain to occur is concomitantly low. Id. 
Mental culpability is of such a nature that it generally must be inferred from the
circumstances under which a prohibited act or omission occurs. Hernandez v. State, 819
S.W.2d 806, 810 (Tex. Crim. App. 1991).

 We find that direct and circumstantial evidence as well as logical inferences support
the trial court's denial of the motion for instructed verdict. Viewing the evidence in the light
most favorable to the State, we find the evidence to be legally sufficient. See Jackson, 
443 U.S. at 319. 

 9. Consecutive Sentencing 

 Appellant complains his sentences should have run concurrently, and not
consecutively. At the sentencing hearing, the defense argued for concurrent sentencing
based upon the application of section 3.03 of the penal code. Tex. Penal Code Ann. § 
3.03. On appeal, he contends the court's consecutive sentences of twenty years on count
II and ten years on count III (tampering) were improper. At the hearing, the trial court found
as a matter of fact that the crime of murder, a crime of passion, happened on or about
March 17, for which he sentenced appellant to twenty years. Charged with tampering,
and found guilty by the jury, on a separate date of March 18, the court sentenced appellant
to ten years, the sentences to run consecutively because of these findings.

 10. Standard of Review

 A complaint about consecutive sentences is reviewed under an abuse of discretion
standard. Macri v. State, 12 S.W.3d 505, 511 (Tex. App.-San Antonio 1999, pet. ref'd). 
The test for abuse of discretion is whether the trial court's action falls within the zone of
reasonable disagreement. Manning v. State, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).

 Generally, the trial court has discretion to order that sentences be served
consecutively. Tex. Code Crim. Proc. Ann. art. 42.08 (Vernon 2000). However, when
the accused is found guilty of more than one offense arising out of the same criminal
episode prosecuted in a single criminal action, the sentences shall run concurrently. Tex.
Penal Code Ann. § 3.03 (Vernon 1994). "Criminal episode" is defined as the commission
of two or more offenses if: (1) the offenses are committed pursuant to the same
transaction or pursuant to two or more transactions that are connected or constitute a
common scheme or plan; or (2) the offenses are the repeated commission of the same or
similar offenses. Id. § 3.01. If section 3.03 of the Texas Penal Code does not apply, the
trial court retains the right to cumulate sentences under article 42.08 of the Texas Code
of Criminal Procedure. See Lumpkin v. State, 681 S.W.2d 885, 889 (Tex. App.-Fort Worth
1984, no pet.) (citing Smith v. State, 575 S.W.2d 41 (Tex. Crim. App. 1979)).

 11. Discussion

 The first question is whether the State prosecuted appellant in a single criminal
action for more than one offense. Here, three charges were brought in a single trial. 
Regardless of whether a defendant is charged pursuant to one instrument or several, any
time the State presents allegations and evidence of multiple offenses in a single trial or
plea proceeding, the "single criminal action" provision of section 3.03 is met. LaPorte v.
State, 840 S.W.2d 412, 415 (Tex. Crim. App. 1992). The more difficult question is whether
the count II murder by passion and count III tampering are a single criminal episode.

 The State cites and argues from Garza that appellant's conduct constitutes two
independent schemes, first to kill, then hide, the victim. Garza v. State, 37 S.W.3d 130,
133 (Tex. App.- San Antonio 2001, no pet.). "Possession of marijuana and assault are
not the same or similar offenses; therefore, the offenses were not part of the same criminal
episode unless they were committed pursuant to the same transaction or pursuant to two
transactions that were connected or constituted a common scheme or plan." Id. However,
the Garza record did not contain any evidence detailing the circumstances surrounding the
commission of the two offenses. Id. The only information that remotely linked the offenses
was the allegation that both offenses were committed on or about the same date, which
is not sufficient evidence from which to determine that the offenses were pursuant to the
same transaction or were connected by a common scheme or plan. Id.

 In Haliburton, the court turned first to the practice commentary following section
3.03. Haliburton v. State, 578 S.W.2d 726, 729 (Tex. Crim. App. 1979). The language of
that commentary indicated that section 3.03 does no more than treat "multiple convictions
resulting from prosecution of joined offenses as a single conviction for sentencing
purposes." Id. The purpose of the statute appears to be convenience and efficiency,
permitting one trial on the joined counts, and treating the separate offenses as one for
sentencing purposes. Id. 

 Next, we note that passages of time, or crimes committed on different dates, do not
preclude multiple offenses from being a single criminal episode. See Hernandez v. State,
938 S.W.2d 503, 508-09 (Tex. App.-Waco 1997, pet. ref'd) (April 16 cocaine sale and
September 22 marihuana sale merely repetitious commissions of same offense); Guidry
v. State, 909 S.W.2d 584, 585 (Tex. App.-Corpus Christi 1995, pet. ref'd) (Section 3.01(2)
of Texas Penal Code does not impose time differential between commission of same or
similar offenses). In Guidry, the defendant was indicted in Cause No. 92-CR-2134-D for
the first aggravated robbery, in Cause No. 92-CR-2133-D for the aggravated sexual assault
case, and in Cause No. 92-CR-2135-D for the second aggravated robbery. Id. In a single
criminal proceeding, Guidry pleaded guilty to all three indictments without the benefit of a
plea bargain. Id. The trial court assessed a life sentence in each case, but stacked the
sentence of the first aggravated robbery on the sentence assessed in the aggravated
sexual assault case and then stacked the sentence assessed in the second aggravated
robbery on that assessed for the first aggravated robbery. Id. We held that section 3.01(2)
does not impose a time differential between the commission of the same or similar
offenses. Id. ("Had the Legislature wanted us to consider a time differential in the
application of this section of the Code, it could have easily done so."). Id.

 In Howard, the defendant was charged in the same indictment with possession of
cocaine on two different occasions. Howard v. State, 888 S.W.2d 166, 169 (Tex.
App.-Waco 1994, pet. ref'd). That court held, even though the two offenses occurred more
than a week apart, they were still part of the same criminal episode in that they were
merely repetitious commissions of the same offense. Id. at 171. In Baker, each of three
offenses involved a different victim. Baker v. State, 107 S.W.3d 671, 673 (Tex. App.-San
Antonio 2003, no pet.) The aggravated sexual assault occurred on September 29, 1999
at approximately 5:30 a.m. near the victim's house on Hope's Ferry; the sexual assault
occurred almost ten months later on July 22, 2000, in the early morning hours inside the
victim's house on Hope's Ferry; the burglary of a habitation with intent to commit sexual
assault occurred a month later on August 29, 2000, at approximately 3:00 a.m. inside the
victim's house at the corner of Provision and Hope's Ferry. Id. That court concluded all
three offenses constituted the same criminal episode. Id. 

 At the sentencing hearing, the trial court observed that if the tampering had occurred
on March 17, the same day as the murder, ". . .clearly, it would be one criminal episode
here." However, because he found both the indictment and conviction for tampering were
for March 18, a separate day, the sentences should run consecutively. We disagree. The
criminal episode began with the killing and followed almost immediately by placing the body
in the nearby goose pen. As the trial court noted, this was the continuation of one
transaction. Only hours later, at 2 a.m. the next morning, the same defendant moved the
same body, to a new, more remote grave off premises. We hold that such actions were
committed pursuant to the same transaction or pursuant to two or more transactions that
are connected. Tex. Penal Code Ann. § 3.03; Guidry 909 S.W.2d at 585. An improper
cumulation order is, in essence, a void sentence, and such error cannot be waived. Levy
v. State, 818 S.W.2d 801 (Tex. Crim. App. 1991). We sustain appellant's third issue and
reform the judgment to delete the cumulation order. Appellant's sentences are to run
concurrently.

 12. Expert Pathologist

 In his fourth issue, appellant argues the trial court erred by completely excluding the
testimony of the defense expert pathologist, Dr. Carlos Mattioli. Mattioli was board certified
in both clinical and anatomical pathology. He served as Director of Laboratories at Mission
Hospital, Mission, Texas. Mattioli performed over 500 autopsies. Appellant argues that
while Mattioli was not perfect, he was board certified and could have impeached Farley's
nebulous conclusions, thus allowing appellant to present a defense, citing Negrini v. State,
853 S.W.2d 128, 130 (Tex. App.-Corpus Christi 1993, no pet.). Negrini sets out general
standards for expert witness qualifications which we address below. See id. From several
federal and state cases, appellant argues for his fundamental right to present witnesses. 
See Chambers v. Miss., 410 U.S. 284, 302 (1973) (few rights are more fundamental than
that of an accused to present witnesses in his own defense; in the exercise of this right,
the accused, as is required of the State, must comply with established rules of procedure
and evidence designed to assure both fairness and reliability in the ascertainment of guilt
and innocence). A court should not mechanistically apply rules of evidence to defeat the
ends of justice where constitutional rights directly affecting the ascertainment of guilt are
implicated. Id. Appellant further asserts that the right to present a defensive theory is
constitutional, and that rules of evidence must be flexible and must sometimes bend to the
due-process rights of the defendant, citing Alonzo v. State, 67 S.W.3d 346, 359 (Tex.
App.-Waco 2001, pet. dism'd.) (decision to admit otherwise inadmissible evidence
because of due-process concerns is made on a case-by-case). Here, appellant argues,
Mattioli could have possibly impeached Farley's speculative conclusion that Ortega may
have been strangled because the State's expert could not rule it out. The impeachment
by Mattioli, if allowed, would have raised other possible causes of death.

 Appellant claims he was denied the benefit of a defensive theory raising reasonable
doubt, citing Davis v. Alaska, 415 U.S. 308, 317 (1974) (jurors were entitled to have the
benefit of the defense theory before them so that they could make an informed judgment
as to the weight to place on witness's testimony which provided "a crucial link in the proof
. . . "). From Robinson and Thomas, appellant argues that great latitude should be allowed
a defendant in showing any fact which would establish bias, motive or ill feeling on the part
of any witness for the State. See Thomas v. State, 669 S.W.2d 420, 423 (Tex.
App.-Houston [1st Dist.] 1984, pet. ref'd.) (citing Robinson v. State, 550 S.W.2d 54, 59
(Tex. Crim. App. 1977)); see also Virts v. State, 739 S.W.2d 25, 29 (Tex. Crim. App. 1987)
(the trial judge should always allow the accused great latitude to show any relevant fact
that might tend to affect the witness's credibility).

 Appellant further contends that a person may testify absent degrees in chemistry
or medicine when the expert had certification and experience in an area again citing
Negrini, 853 S.W.2d at 130. Negrini reiterates, however, that the trial court maintains
discretion when determining whether a witness has been qualified as an expert. Id. 
Appellant cites other authority allowing the testimony of an expert who is not certified
based upon practical experience. See Gates v. State, 24 S.W.3d 439, 444 (Tex.
App.-Houston [1st Dist.] 2000, pet. ref'd.). In Gates, the appellate court held that officer
Mayes's experience with suicides, both while working in a funeral home, and as a peace
officer, resulted in a specialized knowledge of suicides that would help the trier of fact
understand the evidence regarding whether it is an usual occurrence for a person who
commits suicide to shoot herself in the back of the head. Id. As we discuss below,
appellant did not demonstrate to the trail court that Mattioli had any experience with
strangulations or decomposed bodies.

 13. Standard of Review

 A trial judge's ruling on admissibility of expert testimony is reviewed under an abuse
of discretion standard. Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). 
The Texas Rules of Evidence set out three separate conditions regarding admissibility of
expert testimony. Vela v. State, 209 S.W.3d 128, 130-31 (Tex. Crim. App. 2006). First,
Rule 104(a) requires that preliminary questions concerning the qualification of a person to
be a witness are be determined by the court. Id. Second, Rule 702 states: "If scientific,
technical, or other specialized knowledge will assist the trier of fact to understand the
evidence or to determine a fact in issue, a witness qualified as an expert by knowledge,
skill, experience, training, or education may testify thereto in the form of an opinion or
otherwise." Id. (citing Tex. R. Evid. 702). And third, Rules 401 and 402 render testimony
admissible only if it tends to make the existence of any fact that is of consequence to the
determination of the action more probable or less probable than it would be without the
evidence. Id. (citing Tex. R. Evid. 401, 402). 

 These rules require a trial judge to make three separate inquiries, which must all
be met before admitting expert testimony: "(1) the witness qualifies as an expert by reason
of his knowledge, skill, experience, training, or education; (2) the subject matter of the
testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony
will actually assist the fact-finder in deciding the case." Id. at 131. These conditions are
commonly referred to as: (1) qualification, (2) reliability, and (3) relevance. Id.

 A witness must first have a sufficient background in a particular field, but a trial
judge must then determine whether that background "goes to the very matter on which [the
witness] is to give an opinion." Id. (citing Broders v. Heise 924 S.W.2d 148, 153 (Tex.
1996) (citing Christophersen v. Allied-Signal Corp., 939 F.2d 1106 (5th Cir. 1991)); see
also Gammill v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 719 (Tex. 1998) ("Just as
not every physician is qualified to testify as an expert in every medical malpractice case,
not every mechanical engineer is qualified to testify as an expert in every products liability
case.") The proponent of the testimony has the burden to show that the expert "possesses
special knowledge as to the very matter on which he proposes to give an opinion." 2 RAY,
TEXAS LAW OF EVIDENCE: CIVIL AND CRIMINAL § 1401, at 32 (Texas Practice 3d ed.
1980); Matson v. State, 819 S.W.2d 839, 851 (Tex. Crim. App. 1991).

 Dr. Mattioli admitted he was not a forensic pathologist. Forensic pathology is a sub-speciality of pathology. Mattioli practiced in the area of anatomical pathology for a local
hospital, not as a forensic pathologist. He stated his autopsies were conducted in the
same manner as the State's expert Farley. However, Mattioli did not see the victim's body. 
He didn't or would not consider the police report. Mattioli had not performed autopsies on 
strangulations, de-composed bodies, or any other criminal cases including homicides in
over twenty years. While the witness had given deposition testimony, he had not testified
as an expert in a trial prior to this case. His last formal training in performing autopsies was
over thirty years earlier, although he studied and attended medical conferences regularly.

 We find that the trial court could have reasonably concluded that the defense did
not demonstrate that Mattioli was sufficiently qualified in the sub-speciality of forensic
pathology. See Matson, 819 S.W.2d at 851. 

 Further, the trial court could have reasonably concluded that Mattioli's methodology,
without accessing or viewing the corpse, was not scientifically reliable. (3) The proponent of
scientific evidence bears the burden of proving to the trial court, by clear and convincing
evidence, that the evidence is sufficiently relevant and reliable to assist the jury in
determining a fact in issue. Layton v. State, 280 S.W.3d 235, 241 (Tex. Crim. App. 2009)
(citing, inter alia, Kelly v. State, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992)). The court
also identified a nonexclusive list of factors that could influence a trial court's determination
of reliability. These include: (1) the extent to which the theory and procedure are accepted 
as valid by the relevant scientific community; (2) the technique's potential rate of error; (3)
the availability of experts to test and assess the method or technique; (4) the clarity and
precision with which the underlying scientific premise and approach can be explained to
the court; and (5) the knowledge and experience of the person(s) who applied the
methodology on the occasion in question. Id. 

 Appellant cites to Kelly and Negrini to argue that it was the trial court's burden to
undertake a full determination of reliability. See Negrini 853 S.W.2d at 130; Kelly, 787
S.W.2d at 548; (4) While in one sense this is correct, the burden of persuasion is upon the
proponent of the expert testimony. Layton, 280 S.W.3d at 241. Once the proponent
proffers her expert, then the trial court would undertake its responsibility. Kelly stated, "We
need not decide today what burden of persuasion is applicable under Texas Rule of
Criminal Evidence 702 when the scientific evidence proffered is not truly 'novel.'" Kelly,
787 S.W.2d at 573. Kelly did hold that in the case of novel evidence, the burden was on
the proponent. Id. Negrini held that the burden of establishing a witness's qualification as
an expert lies on the party seeking to offer that witness's testimony. Negrini, 853 S.W.2d
at 131. We reject appellant's argument about the burden of persuasion.

 We conclude that the trial court did not abuse its discretion by finding either the
defense expert was not proven to be qualified or his methods reliable, or both. See
Weatherred, 15 S.W.3d at 542. 

 14. Sudden Passion Instruction

 In his final issue, appellant contends the trial court erred by refusing to give a
sudden passion instruction during the guilt phase on the third count of tampering. He
acknowledges the change in the law beginning September 1, 1994, making sudden
passion a punishment phase instruction in a murder case. See Tex. Penal Code Ann. § 
 19.02(d).

 15. Standard of Review

 The trial judge has an absolute sua sponte duty to prepare a jury charge that
accurately sets out the law applicable to the specific offense charged. Delgado v. State,
235 S.W.3d 244, 249 (Tex. Crim. App. 2007). Issues that involve diminished culpability,
but not acquittal in the form of lesser-included-offense jury instructions, need not be
submitted sua sponte if neither side requests such an instruction. Id. 

 16. Discussion

 Appellant argues that although sudden passion is now a punishment issue with the
burden placed upon the defendant, the law remains that the instruction must be given if
there is some evidence rasing the issue. Appellant cites Trevino v. State, 100 S.W.3d 232,
238 (Tex. Crim. App. 2003). It is true this authority states a sudden passion charge should
be given if there is some evidence to support it, even if the evidence is weak, impeached,
contradicted, or unbelievable. Id. Trevino stated that the previous standard for submission
of the charge is now the same as it was before the law change placing the sudden passion
charge in the punishment phase. Id. This authority, however, does not support appellant's
contention that the instruction should be given in the guilt phase.

 Appellant further argues that the charge should be given because it deals with the
knowledge element in that appellant had to know that he committed murder or aggravated
assault. According to the argument, appellant may have simply panicked when he first hid
the body and the subsequent conduct was a continuation of the sudden passion.

 The State notes that appellant cites no legal authority supporting his request for the
charge in the guilt phase. See Tex. R. App. P. 38.1(i). We agree with the State that since
1994, the issue of sudden passion is given to the jury at the punishment phase of trial and
then is given in connection with a murder charge, not a tampering charge. See Tex. Penal
Code Ann. § 19.02(d). We overrule appellant's fifth issue. 

 17. Conclusion

 We reform the judgment to delete the cumulation order. The judgment and
sentence, as reformed, is affirmed. 

 

 DON WITTIG

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and 

filed this the 17th day of September, 2009.

1. Retired Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of
Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon Supp. 2004).

2. The prosecution noted to the trial court it had no interest in seating a new panel.
3. Appellant argues that Mattioli's techniques were never allowed into testimony. However, as we
noted infra, that is the burden of the proponent of the expert to establish reliability.
4. Appellant's pin point cite is inaccurate.