**Ex parte John Robert HOMANN, Appellant.**

**No. 3–89–106–CR.**

Court of Appeals of Texas, Austin.

Nov. 29, 1989.

William M. Rugeley, San Marcos, for appellant.

Jeffrey L. Van Horn, Criminal Dist. Atty., Lockhart, for State.

Before POWERS, CARROLL and ABOUSSIE, JJ.

POWERS, Justice.

On application for writ of habeas corpus filed by John Robert Homann, we review his claim that the trial court erred in overruling a plea of double jeopardy interposed by Homann in the State's felony prosecution against him for an alleged misappropriation of construction-trust funds. Tex. Prop.Code Ann. § 162.001 *et seq.* (1984). Believing the record shows no error, we will deny the relief requested.

### THE CONTROVERSY

A jury was chosen and sworn September 19, 1988. On the trial court's instruction, the proceedings recessed until 9:30 o'clock the following morning. At the appointed hour, one juror failed to appear in court.

The trial court instructed that attempts be made to locate her.

While waiting to learn the whereabouts of the missing juror, there occurred before noon an out-of-court discussion between the trial judge, defense counsel, and the prosecuting attorney. In that discussion, the judge informed the attorneys that he was thinking of declaring a mistrial if the missing juror could not be found and brought to court. The prosecuting attorney opposed that course, saying that if a mistrial was ordered "the chances are very likely that this case will never be tried again." The judge asked the prosecuting attorney what alternative course he would suggest, since it appeared that defense counsel would not agree to a mistrial. The judge asked defense counsel if that was not his position, and defense counsel replied that it was. Neither attorney suggested an alternative to a mistrial.

That afternoon, the court heard testimony from an official that she had located the missing juror, at her place of employment in Austin, and had told the juror that she (the official) would pick her up in Austin and drive her to the courthouse in Lockhart. The juror refused to give the official an address where she could be picked up or a location where she would be after work, stating that she could not be a juror because she had bills to pay and would not make any money by her jury service. The official also spoke on the telephone with the juror's employer who stated that he would encourage the juror to attend court. The official concluded her testimony by stating that she had no reason for believing that the juror would appear at the courthouse later that afternoon.

Turning to the prosecuting and defense attorneys, the trial court asked the position of each regarding the apparent necessity of a mistrial. The prosecuting attorney replied that he had nothing to say. Defense counsel stated that the missing juror appeared to be a favorable juror for the defense, and he was disappointed at not going forward, but he "understood the Court's ruling." The court asked defense counsel if he had discussed with his client the possibility of agreeing to a trial with eleven jurors. Defense counsel replied that he had, and that he and his client had "looked at 32.29, Code of Criminal Procedure," regarding cases where a juror becomes ill, "but we would prefer to have twelve jurors."

The court thereupon ordered a mistrial, at about 2:00 o'clock p.m., then dismissed the remaining jurors after explaining to them the necessity for such action.

Thereafter, Homann moved to dismiss the cause with prejudice on the ground that he had not consented to the mistrial, that no "manifest necessity" required the mistrial, and that a new trial would place him again in jeopardy for the same offense. Subsequently, Homann filed an application for habeas corpus relief in the trial court, urging substantially the same grounds for such relief as those set out in his motion to dismiss the cause.

The trial court denied habeas corpus relief and overruled the motion to dismiss. Thereafter, Homann filed in this Court an application for habeas corpus relief in which he contends the trial court abused its discretion in ordering a mistrial.

## DISCUSSION AND HOLDINGS

■ The trial court declared the mistrial on its own motion and on defense counsel's refusal to proceed with eleven jurors. There is no suggestion in the case that the juror's absence resulted from any act of a party, the judge, the attorneys, or any other official. If there existed no "manifest necessity" for the mistrial, the plea of former jeopardy would be good and Homann would be entitled to habeas corpus relief regarding the criminal proceeding pending against him. *Schaffer v. State*, 649 S.W.2d 637 (Tex.Cr.App.1983); *Ex parte Robinson*, 641 S.W.2d 552 (Tex.Cr.App.1982). Conversely, if there existed a "manifest necessity" for the mistrial the original jeopardy simply continues until a verdict is returned in the proceeding. *Ex parte McAfee*, 761 S.W.2d 771 (Tex.Cr.App.1988).

■ The words "manifest necessity" imply *degrees* of necessity, and mean simply a

"high degree" of necessity in light of all the relevant circumstances. *Arizona v. Washington*, 434 U.S. 497, 506–07, 98 S.Ct. 824, 830–31, 54 L.Ed.2d 717 (1978); *Torres v. State*, 614 S.W.2d 436, 442 (Tex.Cr.App. 1981). Circumstances vary, of course, making easier or more difficult any appellate appraisal of whether the trial court abused its discretion in ordering a mistrial.

The mistrial decision ordinarily requires the balancing of two competing interests: the defendant's right in having the trial completed, as opposed to the public's interest in fair trials designed to end in just judgments. *Illinois v. Somerville*, 410 U.S. 458, 463, 93 S.Ct. 1066, 1070, 35 L.Ed.2d 425 (1973). In appraising the balance struck by the trial court, the appellate court should first ascertain the basic quality of the trial-court decision to order a mistrial. Does the record show that the trial court acted deliberately in reference to the competing interests, after giving the prosecution and defense an opportunity to explain their positions and protect their respective interests; or does the record show that the trial court acted irresponsibly or precipitately regarding those matters? *Id.* at 465–66, 469–71, 93 S.Ct. at 1072–73. Where the record shows the former, the trial-court decision to order a mistrial is entitled to great respect by the appellate court. *Cf. Washington*, 434 U.S. at 510–14, 98 S.Ct. at 832–35 (trial-court order accorded great deference where record showed trial court evinced concern for possible double jeopardy consequences of an erroneous ruling, and afforded defense and prosecution an opportunity to explain their positions on the issue); *Schaffer*, 649 S.W.2d at 639 (mistrial order of trial court reversed, and plea of former jeopardy sustained, where nothing in appellate record revealed: a basis for the trial court's conclusion that a mistrial was required on ground that a prospective juror was absolutely disqualified to serve; that the defendant was given an opportunity to inquire into the matter before the trial court ordered the mistrial *sua sponte;* that the parties were allowed to consider proceeding with eleven jurors under statutory authority; or that an explanation was given the defendant regarding the effect of excusing the one juror).

■ We believe the appellate record in the present case shows that the trial judge's decision to order a mistrial, in the circumstances, is entitled to considerable deference on appeal. The record reveals that he acted deliberately and responsibly, in the sense referred to above, after consulting with the defense and prosecuting attorneys and after hearing evidence concerning attempts to locate the missing juror and obtain her presence in court. Holding the trial judge's decision is entitled to great respect does not, of course, end our inquiry concerning whether that decision amounted to an abuse of discretion.

■ The record shows firstly that the trial court acted on substantial information, including the testimony recited above. Secondly, the record indicates the court considered the relevant factors before arriving at a decision to order a mistrial. Basically, these factors were: (1) no evidence had been adduced in the case; (2) the juror's absence was not due to any act or omission on the part of any party or official, but was due solely to recalcitrance on the part of the missing juror; (3) the prosecuting attorney opposed a mistrial while defense counsel opposed proceeding with eleven jurors after consulting the defendant on that possibility, but neither attorney wished to suggest an alternative; (4) the official who had succeeded in contacting the missing juror testified that she (the official) did not believe the juror would appear at the courthouse that afternoon, and the testimony perhaps carried an implication that the juror would evade attempts to compel her appearance; (5) no steps had been taken, however, to compel the juror's appearance, and it could not be known for sure that these would be unsuccessful; and (6) the time was about 2:00 o'clock p.m., which was only four and one-half hours after the time the case was called, and only about two hours after the juror had been contacted by telephone and told her·appearance was required and that an official would pick her up in Austin to drive her to Lockhart. Factors one through four weigh in

favor of a mistrial, while five and six weigh against it.

We believe the trial court reasonably could have assessed the relevant factors as follows. While the official had spoken with the missing juror only a short time before, the tenor and effect of the official's testimony implied that the juror would not appear voluntarily in any event, and might evade attempts to compel her appearance. If the juror evaded such attempts, a mistrial might be inevitable; and, at best, she might be an unfair juror, whether she appeared voluntarily or involuntarily, owing to her resentment at having to serve. In any case, sufficient time had elapsed to permit the juror to travel from Austin to Lockhart. Under this reasoning, factors five and six would be discounted considerably in comparison to the weight patently inherent in factors one through four. This was evidently the judge's reasoning, as indicated in his statements to the remaining jurors that he had determined that the missing juror "has no intention of coming here voluntarily," and in any event "she's not going to be a fit juror to sit in judgment in this case," leaving the court no alternative but to declare a mistrial.

We cannot conclude the trial court's rationale is invalid for any reason. The trial court could best interpret the meaning of the testimony given. It does not appear that the court failed to consider a relevant factor, exaggerated a relevant factor, considered a legally irrelevant factor, or that the court acted without sufficient information to make a reasonable decision either way. It follows that we cannot reverse the trial judge's decision as an abuse of discretion for the choice to order a mistrial was one legally available to him in the circumstances, and the record reveals that he did not make the choice arbitrarily. We hold accordingly, and affirm the trial court's order denying the relief requested by Homann.