Albert A. NEGRINI, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–91–606–CR.

Court of Appeals of Texas, Corpus Christi.

April 1, 1993.

Michael W. Williams, Port Aransas, for appellant.

Carl Lewis, Frank Errico, Corpus Christi, for appellee.

Before DORSEY, KENNEDY and FEDERICO G. HINOJOSA, Jr., JJ.

### OPINION

DORSEY, Justice.

After appellant pleaded not guilty to the offense of driving while intoxicated,[1] a jury found him guilty and the trial court assessed punishment of 180 days in jail, probated for two years, and a $500 fine. By three points of error, appellant complains of the trial court's refusal to allow certain evidence and of the jury charge. We reverse and remand for a new trial.

By point of error two, appellant contends that the trial court erred by not permitting one of his defense witnesses, Eddie Gonzalez, to testify about alcohol "burn-off," or the rate at which the liver metabolizes alcohol and eliminates it from the body. The State contended that Gonzalez, a probation officer and D.W.I. instructor, was not qualified as an expert to testify about the subject because he lacked a background in medicine or chemistry and was relying on information he obtained from a class, not from a treatise. The parties conducted a voir dire examination of the witness to

---

1. TEX.REV.CIV.STAT.ANN. art. 6701*l*–1(b) (Vernon 1993).

determine whether he was qualified as an expert in the area.

Eddie Gonzalez testified during voir dire that he is in charge of alcohol screening evaluations and he is one of six D.W.I. instructors in the Nueces County Probation Office. A D.W.I. instructor teaches a 12–hour mandatory course for probationers, informing them of the affects of alcohol on the body, particularly while one is driving. One of the major areas taught in the classes is blood alcohol content. Using his training and certification, Gonzalez teaches between one and five 12–hour D.W.I. classes per month.

To become a D.W.I. instructor, Gonzalez was required to attend a 40–hour D.W.I. instructor's school. Gonzalez explained that the entire D.W.I. training school curriculum was based on the affects of alcohol consumption on the body and on driving skills. Moreover, he testified that blood alcohol content is "a major component of D.W.I.;" "everything revolves around the BAC [blood alcohol content]."

Gonzalez was admitted into the D.W.I. instructor's school on the basis of merit. He became a certified D.W.I. instructor in 1980 and has been recertified every two years since that time. Recertification requires attendance at a two-day seminar during which the standard D.W.I. curriculum is repeated, highlighting all updated information and new features or changes.

Gonzalez explained that a formula is used to approximate a person's blood alcohol level. The liver metabolizes alcohol at the rate of .015% per hour. In practical terms, this means that a person eliminates one drink, for instance one beer, in one hour. Weight, food, emotions, and psychological implications are all variables affecting the formula.

Gonzalez testified on cross-examination that he does not have a degree in chemistry or in medicine; his experience in those ar-

eas is derived from his specialized D.W.I. research, training, and experience.

The State objected to Gonzalez's qualification as an expert on the grounds that while he knew the alcohol burn-off formula, he had no personal knowledge of the body's elimination of alcohol. The State contended that Gonzalez was relying merely upon what he had heard, and that appellant failed to introduce treatises upon which Gonzalez relied. The State contended that Gonzalez's classroom instruction was insufficient to qualify him as an expert. We disagree.

■ The Texas Rules of Criminal Evidence expressly state that if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about that knowledge in the form of an opinion or otherwise. TEX. R.CRIM.EVID. 702.

■ The special knowledge qualifying a witness as an expert may be gleaned entirely from studying technical works, from obtaining a specialized education, from practical experience, or from a combination of the three. *Perryman v. State*, 798 S.W.2d 326, 329 (Tex.App.—Dallas 1990, no pet.); *Acosta v. State*, 752 S.W.2d 706 (Tex. App.—Corpus Christi 1988, pet. ref'd); *see Holloway v. State*, 613 S.W.2d 497, 501–02 (Tex.Crim.App.1981). For example, Texas courts have held that, based upon a police officer's training and experience, he or she is qualified as an expert to visually identify marihuana.[2] Moreover, in *Perryman*, the court preliminarily found a police officer competent to testify as an expert on the subject of the psychological profile of the victim's rapist. The court relied on the officer's practical experience dealing with sexual assaults, his specific training in psychological profiling, and his use of the profiling technique. *Id.* at 329.[3] In *Trevino*

---

**2.** See *Fierro v. State*, 706 S.W.2d 310, 318 (Tex. Crim.App.1986); *Rumsey v. State*, 675 S.W.2d 517, 521 (Tex.Crim.App.1984); *Ward v. State*, 659 S.W.2d 643, 645 (Tex.Crim.App.1983).

**3.** The court ultimately held that the officer could not testify because "the prejudicial and inflammatory effect of the opinion testimony clearly outweighed its probative value...." *Id.* at 330–31.

*v. State,* 783 S.W.2d 731, 733 (Tex.App.—San Antonio 1989, no pet.), the court found a teacher qualified to testify as an expert on assessing the abuse of a child. The witness, who had a degree in art education with several certifications in the special education department, had taken several courses and attended a workshop during which she was trained to look for behavior patterns in children. On the basis of the courses she had taken, the court found her qualified to testify about her assessment of the victim, an abused child. *Id.* at 733.

■ Moreover, the witness's knowledge must assist the jury in evaluating and understanding facts and issues that are not within the jury's common experience. *Duckett v. State,* 797 S.W.2d 906, 910 (Tex.Crim.App.1990); *Lopez v. State,* 815 S.W.2d 846, 849–50 (Tex.App.—Corpus Christi 1991, no pet.); *Wade v. State,* 769 S.W.2d 633, 635 (Tex.App.—Dallas 1989, no pet.). In *Pierce v. State,* 777 S.W.2d 399, 414 (Tex.Crim.App.1989), *cert. denied,* 496 U.S. 912, 110 S.Ct. 2603, 110 L.Ed.2d 283 (1990), the court held that an architect was not permitted to testify as an expert on perception and perspective. The appellant attempted to admit the testimony to show the suggestiveness of his lineup. The court found that perception and perspective were concepts understood by the jurors and therefore the witness's testimony would not be of assistance to them. *Id.* at 414.

■ The burden of establishing a witness's qualification as an expert lies on the party seeking to offer that witness's testimony. *Matson v. State,* 819 S.W.2d 839, 851 (Tex.Crim.App.1991); *Perryman,* 798 S.W.2d at 329. The trial court maintains discretion when determining whether a witness has been qualified as an expert. *Duckett,* 797 S.W.2d at 910; *Fuller v. State,* 819 S.W.2d 254, 258 (Tex.App.—Austin 1991, pet. ref'd); *Perryman,* 798 S.W.2d at 329. We will not overturn the court's decision unless we find a clear abuse of discretion. *Perryman,* 798 S.W.2d at 329; *see Fuller,* 819 S.W.2d at 258.

We find that Gonzalez was qualified as an expert to testify about blood alcohol content. He has been certified as a D.W.I. instructor since 1980 and teaches between 12 and 60 hours of D.W.I. education per month. The central issue underlying D.W.I. is one's blood alcohol content and the effects of certain quantities of alcohol on one's faculties. To this end, Gonzalez must also learn, and teach his students about, the alcohol burn-off rate. Gonzalez's eleven years of training, experience, and teaching of others qualifies him to testify about a fundamental concept of D.W.I. We do not find that, because Gonzalez received his information solely from course work, he is not qualified to testify as an expert. In *Trevino,* the court found a teacher qualified as an expert to assess the abuse of a child on the basis of several courses she had taken and her participation in a workshop related to identifying behavioral patterns in children.

Moreover, the rate at which the liver metabolizes alcohol is a fact not commonly within a person's knowledge and experience. Gonzalez's testimony would therefore assist the jury in evaluating and understanding Negrini's blood alcohol content at the time he was arrested and the effects that quantity of alcohol would have had on his body. We find that the trial court abused its discretion by failing to find Gonzalez qualified to testify as an expert with regard to the alcohol burn-off rate.

■ Having found error, we will reverse the trial court's judgment unless we determine, beyond a reasonable doubt, that the error did not contribute to Negrini's conviction or to his punishment. Tex.R.App.P. 81(b)(2).

Appellant did not submit to an intoxilyzer test the night he was arrested. The State presented evidence, through the testimony of appellant's arresting officer, Officer Sprinkle, that he failed a multitude of field sobriety tests.[4] Appellant contended

---

4. These tests included reciting the alphabet, and performing a counting test, the heel-to-toe test, and a balancing test.

that the officer was lying. To support this theory, appellant brought forth evidence, including his own testimony, that he weighs 210 pounds and that he consumed no more than two or three beers during the hour before he was arrested.

Negrini maintained at trial that he was not drunk on the night in question; rather, he was tired because he had not slept in 15 or 16 hours. Appellant also testified that he was being treated for rather severe allergies at that time.

Appellant prepared a bill of exceptions, now before this Court, in which he presented a hypothetical question to D.W.I. Instructor Gonzalez. The expert's testimony reads as follows:

Q: If you were posed with a hypothetical question of a 200–pound person consuming three beers within an hour's time, could you arrive at the approximate blood alcohol content of that person through your formula which you're talking about?

A: Okay. If he drank three beers within the first hour?

Q: Within a 60–minute period there is consumption of three beers.

A: Yes.

Q: And a person weighs 200 pounds.

A: Hypothetically, that person would register, if they were given the intoxilyzer, might register .045.

Q: .045; is that correct?

A: Right, per alcohol.

Q: So, now what is the State level for intoxication?

A: It's .10.

The jury is the sole trier of fact and of the credibility of witnesses and the weight to be given their testimony. In that role, they could have accepted appellant's version of the facts of the case rather than Officer Sprinkle's. They may well have believed that appellant did not fail the field sobriety tests as miserably as Sprinkle stated, that he was tired, and that he had consumed only three beers in the hour before he was arrested. Had this been the case, Gonzalez's testimony would have been particularly beneficial to appellant's defense, as the jury would have heard evidence that the three beers Negrini consumed would have metabolized at the rate of .015% per hour. Gonzalez would have testified that the 210–pound appellant had a blood alcohol level of .045 at the time he was arrested, well below the legal limit. We do not find beyond a reasonable doubt that the refusal to allow Gonzalez to testify had no effect on the jury's finding of guilt. Point of error two is sustained.

■ By point of error one, appellant contends that the trial court erred by refusing to allow Officer Sprinkle to testify about the alcohol burn-off rate. Appellant contends that because Sprinkle was permitted to give an expert opinion about whether appellant was intoxicated, he should have been permitted to testify about the rate at which the body metabolizes alcohol. We disagree.

Sprinkle, a trained police officer, could proffer his expert opinion, on the basis of his training and experience, about whether appellant was intoxicated. Sprinkle is a certified peace officer who received training in the police academy and in field training. He testified that he received basic training related to recognizing the physical signs of intoxication. In the year and four months he had been with the police department at the time of trial, he had participated in over 40 D.W.I. arrests. Appellant attempted to perform, and purportedly failed, four field sobriety tests. We find that Sprinkle was qualified as an expert to give his opinion about whether Negrini was intoxicated on the night of his arrest.

However, while a person may be qualified as an expert in one area, that person is not necessarily an expert in another area, although it may be closely related. Sprinkle testified, during a voir dire examination to determine his competency as an expert on the alcohol burn-off rate,

Q: [BY APPELLANT]: Do you know any formula related to time and burnoff or lessening of one's blood alcohol content?

A: I believe it's one beer an hour.

Q: All right. Now in relation to percentage, Officer Sprinkle, do you have

any knowledge of whether that would be .02 burnoff of alcohol in the blood?

A: I believe so. I'm not sure.

Q: And isn't it true—we're before the court now, we're a little more relaxed. And isn't it true that you have testified to that before?

A: Yes, sir, I believe so. But I'm not 100 percent sure.

Q: Yeah. And—and so that the—now the burnoff is one beer per hour in a normal person. What would be the elevation effect of one beer? In other words, isn't the formula—we're before the court—isn't the formula that one beer raises .02, and you burn off that beer in an hour? Haven't you heard that?

A: I'm not sure of the elevation. I've heard of the burnoff, but not how fast the person gets intoxicated.

\* \* \* \* \* \*

Q: \* \* \* But—but now it is your knowledge—within your knowledge that you burn off .02 blood alcohol content on the average within an hour, or one beer an hour; is that correct?

A: Yes, sir.

Q: That is your knowledge?

A: That—yes, sir. I'm not for sure.

Q: I'm—Officer Sprinkle, do you have knowledge that you burn one beer per hour?

A: That is what I've heard during one lecture at the police academy, yes, sir.

Q: Have you been taught that?

A: That's what I've heard, sir. I do not—I have not reviewed notes or anything like that, so I can't be 100 percent sure. But that is what, I believe, what I heard during that lecture.

\* \* \* \* \* \*

Q: [BY THE STATE]: Officer, any knowledge that you have with regards to one beer an hour, would it be a fair statement to say that's not based on your own personal knowledge, but on something you might have heard?

A: That is correct.

Q: Okay. So you're not really sure if that's true, right?

A: That is correct. I never had it in reading—in writing.

The trial court did not err by failing to find Sprinkle qualified to testify as an expert witness on the subject of alcohol burnoff. The witness could not be certain whether the body metabolizes one beer per hour; moreover, he had no knowledge of the percentage of alcohol the body will expel. Because the witness could not positively attest to his knowledge of the alcohol burn-off rate, he was not qualified to present evidence on the subject to the jury. Point of error one is overruled.

■ By point of error three, appellant maintains that the court submitted an erroneous charge to the jury. The information charged appellant with driving or operating a motor vehicle in a public place while having an alcohol concentration of .10 or more, and while not having the normal use of his mental or physical faculties. In the jury charge, the court defined the term "intoxicated" as having an alcohol concentration of .10 or more or failing to have the normal use of one's mental or physical faculties. The application portion of the charge then instructs the jury to find the appellant guilty of driving while intoxicated if they find that he has operated a motor vehicle without the normal use of his faculties.

■ The State may allege in the information all of the ways in which an offense may be committed; in the jury charge, the State must limit its allegations to those supported by the evidence. *Nickerson v. State*, 782 S.W.2d 887, 891 (Tex. Crim.App.1990); *Robinson v. State*, 596 S.W.2d 130, 133 (Tex.Crim.App.1980). The trial court is not required to charge the jury on an issue not raised by the evidence. *Nance v. State*, 807 S.W.2d 855, 859–60 (Tex.App.—Corpus Christi 1991, pet. ref'd).

The appellant did not submit to an intoxilyzer test; consequently, no evidence was adduced regarding the appellant's blood alcohol content. Without evidence to support that manner in which the appellant could have committed the offense of driving while intoxicated, the trial court proper-

ly did not include it in the application portion of the charge.

Moreover, had the application paragraph included both methods of driving while intoxicated in the disjunctive, this too would not have been in error. Texas courts allow the State to allege, in the conjunctive, the various means by which the appellant could have committed the offense, then charge the jury on the elements in the disjunctive. *Anderson v. State,* 717 S.W.2d 622, 631–32 (Tex.Crim.App.1986); *State v. Lyons,* 820 S.W.2d 46, 48 (Tex.App.—Fort Worth 1991, no pet.); *Yates v. State,* 766 S.W.2d 286, 288 (Tex.App.—Dallas 1989, pet. ref'd). Point of error three is overruled.

The judgment of the trial court is **RE-VERSED** and the cause **REMANDED** for a new trial.