

# NUMBER 13-07-00712-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**DALE RAYMOND CRUNK,**                                            **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                            **Appellee.**

---

**On appeal from the 138th District Court of Cameron County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Wittig
Memorandum Opinion by Justice Wittig[1]**

Dale Raymond Crunk, appellant, appeals his conviction for intentionally causing serious bodily injury to Javier Ortega causing his death and intentionally or knowingly concealing Ortega's body.  In five issues, appellant argues double jeopardy, error by not granting an instructed verdict, impermissible sentencing by imposing consecutive

---

[1] Retired Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon Supp. 2004).

sentences, exclusion of his expert pathologist's testimony, and failure to instruct on sudden passion in connection with the tampering issue. We will affirm as modified.

## 1. Background

According to appellant, his trial defense counsel appears to have conceded that appellant killed his step son, Ortega. The issue at trial was why the homicide occurred and why appellant buried the body. The evidence showed there was a fight and Ortega hit appellant many times with a pipe, following an argument about money. Appellant briefly secured the pipe from Ortega and hit him once. Appellant continued to try to wrest the pipe and the two fell down. Appellant then choked Ortega until he did not move. Appellant testified he passed out on top of Ortega. The State's pathologist Dr. Norma Jean Farley found no conclusive evidence of strangulation, given the youth of Ortega and decomposition of the body. Farley opined the cause of death to be "homicidal violence for a reason." Appellant admitted to burying the body after he panicked.

## 2. Double Jeopardy

In his first issue, appellant maintains that he should not have been further prosecuted after his first jury was empaneled, sworn in, then dismissed. After his first jury was sworn in, the prosecution noted that a juror was impaneled and sworn who should not have been there. Apparently, the clerk misinterpreted a strike by the defense that was changed to "it was okay." As a result, the twelfth juror, Mary Ann Gallegos, (originally number 42) should have been seated and was not. Instead, juror number 44, Ignatio Jiminez, was seated and sworn. Gallegos was excused from the panel but was still available to serve and was present in the courtroom when the error was discovered by the State. The State initially objected, stating that an error was made, the error invalidated the

2

panel, and there should be a new panel. The prosecutor added, "I really have no interest in doing so. However, I don't see that we have an alternative." The State also objected to the alternates. The trial court ultimately concluded there to be two approaches to the problem. One would be to include Gallegos as the twelfth juror, "or just call another jury tomorrow morning." The State offered a third alternative involving re-striking the juror alternates to which the defense objected. The trial court asked both the State and appellant: "Both of you are going to object? One solution or the other?" Defense counsel replied: "Yes." The State made no reply.

For the first time on appeal, appellant states that seating a new jury panel or a second trial was barred under double jeopardy principles because jeopardy attached when the first jury was impaneled and sworn in.

### 3. Standard of Review

We will review the trial court's finding of manifest necessity for a mistrial by applying an abuse of discretion standard. *Arizona v. Washington*, 434 U.S. 497, 509-14 (1978); *Ex parte Little*, 887 S.W.2d 62, 66 (Tex. Crim. App. 1994); *Ex parte Williams*, 870 S.W.2d 343, 346 (Tex. App.–Fort Worth 1994, pet. ref'd). A mistrial ordinarily requires the balancing of two competing interests: the defendant's right to have the trial completed, and the public's interest in fair trials designed to end in just judgments. *Ledesma v. State*, 993 S.W.2d 361, 364 (Tex. App.–Fort Worth 1999 pet. ref'd.)*; Ex parte Homann*, 780 S.W.2d 933, 935 (Tex. App.–Austin 1989, no pet.)

The defendant's "valued right to have his trial completed by a particular tribunal" is now within the protection of the constitutional guarantee against double jeopardy, since it is that "right" that lies at the foundation of the federal rule that jeopardy attaches when the

jury is empaneled and sworn. *Crist v. Bretz*, 437 U.S. 28, 36 (U.S. 1978). An exception to this rule is made if the defendant consents to a retrial, or if a retrial before a new jury is mandated by some form of manifest necessity. *Torres v. State*, 614 S.W.2d 436, 441 (Tex. Crim. App. 1981) (citations omitted).

Because of the fundamental nature of double jeopardy protections, a double jeopardy claim may be raised for the first time on appeal, or even for the first time by collateral attack, when the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and when enforcement of usual rules of procedural default serves no legitimate state interests. *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000).

### 4. Discussion

Appellant contends, and we agree, that a double jeopardy claim may be raised for the first time on appeal, when the undisputed facts show that a double jeopardy violation is clearly apparent on the face of the record and when enforcement of the ususal rules of procedural default serve no legitimate state interest. *See id.* The trial court, and apparently the State, knew or should have known of a potential double jeopardy issue.[2]

The State contends on appeal that appellant consented to the dismissal of the first panel or that the dismissal was prompted by appellant's objection at trial. The record shows otherwise. The appellant clearly objected when the trial court offered to either seat the erroneously excused juror Gallegos "or just call another jury tomorrow morning." The trial court inquired whether both sides would object to either solution. The defense responded: "Yes." The defense also objected to the prosecution's alternative to seat

---

[2] The prosecution noted to the trial court it had no interest in seating a new panel.

4

Gallegos and then both sides "select the two alternates." As we understand the prosecution's offer, it wanted to re-exercise its peremptory challenges knowing the pool of alternates after the proper seating of Gallegos.

In addition, the State argues that the appellant impliedly consented to be retried. Consent need not be expressed, but may be implied from the totality of circumstances attendant to a declaration of mistrial. *Torres*, 614 S.W.2d at 441-42. While we agree with the stated legal principle, the facts do not support this conclusion as we discussed above. Without citing any authority, the State argues appellant does not demonstrate how the enforcement of the usual rules of procedural default serve no legitimate purpose. *See* TEX. R. APP. P. 38.1(i); 38.2(a)(1).

The State notes that in addition to consent to retrial, another exception to the rule is found where it is mandated by some "manifest necessity" citing, *Torres*, 614 S.W.2d at 442. Appellant counters that the State waived any error in not seating Gallegos by failing to object prior to the jury being sworn in. Thus, the State created the problem by failing to timely object. However, as the State notes, in certain circumstances double jeopardy is not violated unless the State's conduct giving rise to a mistrial motion was "intended to goad" the defendant into moving for a mistrial, citing *Oregon v. Kennedy*, 456 U.S. 667, 675-76 (1982). According to the State, retrial is barred only if the prosecutor intentionally caused a mistrial, citing *Ex parte Lewis*, 219 S.W.3d 335, 358 (Tex. Crim. App. 2007) (defendant's valued right to complete his trial before the first jury would be a "hollow shell" if retrial were permitted after the prosecution, through its conduct, intentionally precipitated a mistrial; the question is whether the defendant retained primary control over the course to be followed) (citations omitted). The record does not demonstrate that the State

intentionally precipitated a mistrial. Nor is there a showing that the defendant retained primary control resulting in the mistrial. *See id.* Both sides agree that the error in not seating Gallegos was an administrative oversight by the clerk's office. The error affected both the State and appellant. *See* TEX. CODE CRIM. PROC. ANN. 35.26 (clerk *shall* call off the first twelve names on the lists that have not been stricken) (emphasis added.)

### 5. Manifest Necessity

"For at least 175 years, America's courts have had the sound discretion to discharge a jury before it has reached a verdict whenever a court concludes, after considering all of the circumstances, that there is a manifest necessity to declare a mistrial to prevent the ends of public justice from being defeated." *Ledesma*, 993 S.W.2d at 365 (citing *Perez*, 22 U.S. at 580; *Harrison v. State*, 788 S.W.2d 18, 22 (Tex. Crim. App. 1990)). An exception to this rule prohibiting the re-trial of a defendant exists when the defendant consents to a re-trial or a mistrial is mandated by "manifest necessity." *Ex parte Fierro*, 79 S.W.3d 54, 56 (Tex. Crim. App. 2002) (citing *Washington*, 434 U.S. at 509-14). We have determined that appellant did not consent to a mistrial or re-trial. We therefore turn to the question of manifest necessity.

Manifest necessity exists when the circumstances render it impossible to arrive at a fair verdict, when it is impossible to continue with trial, or when the verdict would be automatically reversed on appeal because of trial error. *Somerville*, 410 U.S. at 462-64. A trial judge should make more than a perfunctory recitation of the alternatives before granting a mistrial, and should carefully and deliberately consider which of all the alternatives best balances the defendant's interest in having his trial concluded in a single proceeding with society's "interest in fair trials designated to end in just judgments." *Ex*

6

*parte Fierro*, 79 S.W.3d at 56-57 (citing *Washington*, 434 U.S. at 516.)  Otherwise, consideration of less drastic alternatives equates to little more than a pro forma exercise to mask the trial judge's preferred course of action.  *Id.*  Accordingly, where the trial judge fails to explicitly or implicitly rule out a less drastic alternative in favor of granting a mistrial, he has abused his discretion.  *Id.*

In reviewing the propriety of the trial judge's exercise of his discretion, the United States Supreme Court, following Mr. Justice Story, scrutinizes the court's action to determine whether, in the context of that particular trial, the declaration of a mistrial was dictated by "manifest necessity" or the "ends of public justice."  *Somerville*, 410 U.S. at 462-64.  "The interests of the public in seeing that a criminal prosecution proceed to verdict, either of acquittal or conviction, need not be forsaken by the formulation or application of rigid rules that necessarily preclude the vindication of that interest."  *Id.*

In *Somerville*, the high court lists multiple examples of the application of the manifest necessity test.  In *United States v. Perez,* 22 U. S. 579, (1824), and *Logan v. United States*, 144 U.S. 263 (1892), the United States Supreme Court held that manifest necessity justified the discharge of juries unable to reach verdicts, and, therefore, the double jeopardy clause did not bar retrial.  *Somerville*, 410 U.S. at 462-64; *Cf. Keerl v. Montana*, 213 U.S. 135 (1909); *Dreyer v. Illinois*, 187 U.S. 71 (1902).  In *Simmons v. United States,* 142 U.S. 148 (1891), a trial judge dismissed the jury, over defendant's objection, because one of the jurors had been acquainted with the defendant, and, therefore, was probably prejudiced against the government.  *Somerville*, 410 U.S. 458, 463.  It was held that the trial judge properly exercised his power "to prevent the defeat of the ends of public justice."  *Id.*  In *Thompson v. United States*, 155 U.S. 271 (1894), a mistrial was declared after the

7

trial judge learned that one of the jurors was disqualified, having been a member of the grand jury that indicted the defendant. Similarly, in *Lovato v. New Mexico*, 242 U.S. 199 (1916), the defendant demurred to the indictment, his demurrer was overruled, and a jury sworn. The district attorney realized that the defendant had not plead to the indictment after the demurrer had been overruled, moved for the discharge of the jury and arraignment of the defendant for pleading; the jury was discharged, the defendant plead not guilty, the same jury was again impaneled, and a verdict of guilty rendered. *Somerville*, 410 U.S. at 464. The double jeopardy clause did not bar reprosecution. *Id.*

We contrast decisions where no manifest necessity was found. In *Torres*, the trial judge granted a mistrial indicating his belief that a witness had been intimidated into changing his testimony; his conclusion, however, was unsupported by the evidence. *Torres*, 614 S.W.2d at 443. Thus, no manifest necessity was present. *Id.* In *Ex parte Hubbard*, 798 S.W.2d 798, 799 (Tex. Crim. App. 1990), the indictment charged the defendant with two misjoined offenses. Hubbard moved to compel the State to elect between the offenses after the jury was impaneled. In response, the State moved to dismiss the jury because they had been informed of both offenses during voir dire. *Id.* The trial judge granted the State's motion and declared a mistrial. *Id.* The court held there was no manifest necessity for the mistrial because there was an alternative available to dismissing the jury, namely, the State could have elected between the counts. *Id.* at 800. In *Little*, although the jury was empaneled and sworn, due to the lateness of the hour, trial on the merits did not commence until the following day. *Ex parte Little*, 887 S.W.2d at 63. On the morning trial on the merits was to commence, one juror failed to arrive on time. *Id.* After waiting approximately three hours, the trial judge declared a mistrial based on

8

manifest necessity. *Id.* at 63-64. The record demonstrated that the trial judge failed to consider a number of alternatives in lieu of declaring a mistrial, including granting a continuance or issuing a writ of attachment. *Id.* at 66-67. The court concluded that because the trial judge failed to consider and rule out the less drastic alternatives to a mistrial, the record did not support his finding that manifest necessity existed, and consequently, the trial judge abused his discretion. *Id.* at 67.

In *Brown*, a witness for both the State and the defense was not available to testify in order and was unavailable on certain dates. *Ex parte Brown*, 907 S.W.2d 835, 841 (Tex. Crim. App. 1995). The defense offered to allow the witness to testify out of order or substitute the witness's supervisor. *Id.* The court held that because less drastic alternatives were available, there was no manifest necessity to declare a mistrial. *Id.* Therefore, the trial judge necessarily abused his discretion in declaring a mistrial. Accordingly, appellant's retrial was jeopardy barred. *Id.* at 844. In *Fierro,* a juror was erroneously thought to be related to the defendant and challenged for cause. *Ex parte Fierro*, 79 S.W.3d at 57. The challenged juror was not, in fact, challengeable for cause because of consanguinity with appellant. *Id.* Therefore, the trial court erred in excluding her for that reason and granting a mistrial based upon manifest necessity. *Id.*

A defendant charged with a criminal offense has the state constitutional right to a jury. TEX. CONST. ART. I, § 10; *see also* TEX. CONST. ART. 1.05 (Vernon 1977). A jury in a criminal district court is defined as twelve persons. TEX. CONST. ART. V, § 13 TEX. CODE CRIM. PROC. ANN. 33.01 (Vernon 1989).

As the reviewing court, we must determine whether the trial judge acted irrationally or irresponsibly and whether the mistrial order reflects the exercise of sound discretion.

9

*Ledesma*, 993 S.W.2d at 365 (reviewing the trial court's finding of manifest necessity for mistrial by applying an abuse of discretion standard); *see also Parrish* v. State, 38 S.W.3d 831, 835 (Tex. App.–Houston [14th Dist.] 2001, pet. ref'd). Moreover, if the record shows that the trial judge exercised sound discretion in finding a manifest necessity for a retrial, the judge's sua sponte declaration of a mistrial is not incorrect just because the reviewing court might have ruled differently. *Washington,* 434 U.S. at 514-16; *Ledesma*, 993 S.W.2d at 365.

As we discussed supra, the trial court clearly considered the alternatives, including the seating of the correct twelfth juror Gallegos, and proceeding without alternates. The State implicitly rejected the court's offer and the defendant objected. Apparently, the trial court properly rejected the State's third alternative to re-strike the alternates. The court obviously did not choose to proceed without the twelfth juror who had been selected by both parties, Gallegos, number 42. Nor did the court choose to proceed with the juror mistakenly taken out of order, Jiminez, number 44. Under the unique circumstances of this case, we cannot say that the trial court abused its discretion by empaneling a new jury. *Washington*, 434 U.S. 509-14; *Sommerville*, 410 U.S. at 462-64.

### 6.  Instructed Verdict

In his second issue, appellant contends the trial court erred because it failed to grant his motion for directed verdict on count three (tampering) after the State's case in chief. Specifically, he challenges the element of knowledge of murder or aggravated assault. At the point of his motion, appellant had not testified. The pertinent code section provides:

(d) A person commits an offense if the person:

(1) knowing that an offense has been committed, alters, destroys, or conceals any record, document, or thing with intent to impair its verity,

10

legibility, or availability as evidence in any subsequent investigation of or official proceeding related to the offense; or

TEX. PENAL CODE ANN. § 37.09(d)(1).

## 7. Standard of Review

We treat an issue complaining concerning a trial court's failure to grant a motion for directed verdict as a challenge to the legal sufficiency of the evidence. *Williams v. State*, 937 S.W.2d 479, 482-483 (Tex. Crim. App. 1996); *Cook v. State*, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993). Evidence is legally sufficient when, viewed in the light most favorable to the verdict, a rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This court's duty is not to reweigh the evidence from reading a cold record but to "position itself as a final, due process safeguard ensuring only the rationality of the factfinder." *Matamoros v. State*, 901 S.W.2d 470, 474 (Tex. Crim. App. 1995); *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988).

## 8. Legal Sufficiency

After killing his stepson, appellant admittedly placed the body of the deceased into a goose pen. The early morning of the next day, appellant admits he removed the body and buried it on a farm. He returned to the body on a third occasion to better bury the corpse. Appellant admitted in his second statement that he fabricated his initial story to investigators. In the second statement he said: "I knew that I had killed Jarvi and I did not want to get in trouble." Multiple photos showed the decomposing body of the deceased. Appellant also admitted that he struck the deceased with a pipe on the head and choked him until he stopped breathing. "I held on to his throat and did not let go." Appellant then cleaned up the blood from the walls, floor, bricks, work bench, door, and mopped the

11

kitchen floor. Appellant lied to his wife and friends about the episode.

Appellant acknowledges that if there is any evidence to support a verdict of guilt, an issue of fact is considered to be raised and the case will be submitted to the jury, citing *McKenzie v. State*, 617 S.W.2d 211, 218 (Tex. Crim. App. 1981) (given the immediate context in which the statement was made and the circumstances surrounding the occurrence, an issue of fact was raised that presented a jury question, not a matter of law, which the court (properly) determined to submit to the jury). Intent may be inferred from the actions or conduct of appellant. *Robertson v. State*, 871 S.W.2d 701, 705 (Tex. Crim. App. 1993); *McGee v. State*, 774 S.W.2d 229, 234 (Tex. Crim. App. 1989). Establishment of culpable mental states is almost invariably grounded upon inferences to be drawn by the factfinder from the attendant circumstances. *Lane v. State*, 763 S.W.2d 785, 787 (Tex. Crim. App. 1989). The threshold of proof necessary to support a (jury) finding of an awareness that such a result is reasonably certain to occur is concomitantly low. *Id.* Mental culpability is of such a nature that it generally must be inferred from the circumstances under which a prohibited act or omission occurs. *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991).

We find that direct and circumstantial evidence as well as logical inferences support the trial court's denial of the motion for instructed verdict. Viewing the evidence in the light most favorable to the State, we find the evidence to be legally sufficient. *See Jackson,* 443 U.S. at 319.

### 9. Consecutive Sentencing

Appellant complains his sentences should have run concurrently, and not consecutively. At the sentencing hearing, the defense argued for concurrent sentencing

12

based upon the application of section 3.03 of the penal code. TEX. PENAL CODE ANN. § 3.03. On appeal, he contends the court's consecutive sentences of twenty years on count II and ten years on count III (tampering) were improper. At the hearing, the trial court found as a matter of fact that the crime of murder, a crime of passion, happened on or about March 17, for which he sentenced appellant to twenty years. Charged with tampering, and found guilty by the jury, on a separate date of March 18, the court sentenced appellant to ten years, the sentences to run consecutively because of these findings.

## 10. Standard of Review

A complaint about consecutive sentences is reviewed under an abuse of discretion standard. *Macri v. State*, 12 S.W.3d 505, 511 (Tex. App.–San Antonio 1999, pet. ref'd). The test for abuse of discretion is whether the trial court's action falls within the zone of reasonable disagreement. *Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).

Generally, the trial court has discretion to order that sentences be served consecutively. TEX. CODE CRIM. PROC. ANN. art. 42.08 (Vernon 2000). However, when the accused is found guilty of more than one offense arising out of the same criminal episode prosecuted in a single criminal action, the sentences shall run concurrently. TEX. PENAL CODE ANN. § 3.03 (Vernon 1994). "Criminal episode" is defined as the commission of two or more offenses if: (1) the offenses are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme or plan; or (2) the offenses are the repeated commission of the same or similar offenses. *Id.* § 3.01. If section 3.03 of the Texas Penal Code does not apply, the trial court retains the right to cumulate sentences under article 42.08 of the Texas Code of Criminal Procedure. *See Lumpkin v. State*, 681 S.W.2d 885, 889 (Tex. App.–Fort Worth

13

1984, no pet.) (citing *Smith v. State*, 575 S.W.2d 41 (Tex. Crim. App. 1979)).

## 11. Discussion

The first question is whether the State prosecuted appellant in a single criminal action for more than one offense. Here, three charges were brought in a single trial. Regardless of whether a defendant is charged pursuant to one instrument or several, any time the State presents allegations and evidence of multiple offenses in a single trial or plea proceeding, the "single criminal action" provision of section 3.03 is met. *LaPorte v. State*, 840 S.W.2d 412, 415 (Tex. Crim. App. 1992). The more difficult question is whether the count II murder by passion and count III tampering are a single criminal episode.

The State cites and argues from *Garza* that appellant's conduct constitutes two independent schemes, first to kill, then hide, the victim. *Garza v. State*, 37 S.W.3d 130, 133 (Tex. App.– San Antonio 2001, no pet.). "Possession of marijuana and assault are not the same or similar offenses; therefore, the offenses were not part of the same criminal episode unless they were committed pursuant to the same transaction or pursuant to two transactions that were connected or constituted a common scheme or plan." *Id.* However, the *Garza* record did not contain any evidence detailing the circumstances surrounding the commission of the two offenses. *Id.* The only information that remotely linked the offenses was the allegation that both offenses were committed on or about the same date, which is not sufficient evidence from which to determine that the offenses were pursuant to the same transaction or were connected by a common scheme or plan. *Id.*

In *Haliburton*, the court turned first to the practice commentary following section 3.03. *Haliburton v. State*, 578 S.W.2d 726, 729 (Tex. Crim. App. 1979). The language of that commentary indicated that section 3.03 does no more than treat "multiple convictions

14

resulting from prosecution of joined offenses as a single conviction for sentencing purposes." *Id.* The purpose of the statute appears to be convenience and efficiency, permitting one trial on the joined counts, and treating the separate offenses as one for sentencing purposes. *Id.*

Next, we note that passages of time, or crimes committed on different dates, do not preclude multiple offenses from being a single criminal episode. *See Hernandez v. State*, 938 S.W.2d 503, 508-09 (Tex. App.–Waco 1997, pet. ref'd) (April 16 cocaine sale and September 22 marihuana sale merely repetitious commissions of same offense); *Guidry v. State*, 909 S.W.2d 584, 585 (Tex. App.–Corpus Christi 1995, pet. ref'd) (Section 3.01(2) of Texas Penal Code does not impose time differential between commission of same or similar offenses). In *Guidry*, the defendant was indicted in Cause No. 92-CR-2134-D for the first aggravated robbery, in Cause No. 92-CR-2133-D for the aggravated sexual assault case, and in Cause No. 92-CR-2135-D for the second aggravated robbery. *Id.* In a single criminal proceeding, Guidry pleaded guilty to all three indictments without the benefit of a plea bargain. *Id.* The trial court assessed a life sentence in each case, but stacked the sentence of the first aggravated robbery on the sentence assessed in the aggravated sexual assault case and then stacked the sentence assessed in the second aggravated robbery on that assessed for the first aggravated robbery. *Id.* We held that section 3.01(2) does not impose a time differential between the commission of the same or similar offenses. *Id.* ("Had the Legislature wanted us to consider a time differential in the application of this section of the Code, it could have easily done so."). *Id.*

In *Howard*, the defendant was charged in the same indictment with possession of cocaine on two different occasions. *Howard v. State*, 888 S.W.2d 166, 169 (Tex.

15

App.–Waco 1994, pet. ref'd). That court held, even though the two offenses occurred more than a week apart, they were still part of the same criminal episode in that they were merely repetitious commissions of the same offense. *Id.* at 171. In *Baker*, each of three offenses involved a different victim. *Baker v. State*, 107 S.W.3d 671, 673 (Tex. App.–San Antonio 2003, no pet.) The aggravated sexual assault occurred on September 29, 1999 at approximately 5:30 a.m. near the victim's house on Hope's Ferry; the sexual assault occurred almost ten months later on July 22, 2000, in the early morning hours inside the victim's house on Hope's Ferry; the burglary of a habitation with intent to commit sexual assault occurred a month later on August 29, 2000, at approximately 3:00 a.m. inside the victim's house at the corner of Provision and Hope's Ferry. *Id.* That court concluded all three offenses constituted the same criminal episode. *Id.*

At the sentencing hearing, the trial court observed that if the tampering had occurred on March 17, the same day as the murder, ". . .clearly, it would be one criminal episode here." However, because he found both the indictment and conviction for tampering were for March 18, a separate day, the sentences should run consecutively. We disagree. The criminal episode began with the killing and followed almost immediately by placing the body in the nearby goose pen. As the trial court noted, this was the continuation of one transaction. Only hours later, at 2 a.m. the next morning, the same defendant moved the same body, to a new, more remote grave off premises. We hold that such actions were committed pursuant to the same transaction or pursuant to two or more transactions that are connected. TEX. PENAL CODE ANN. § 3.03; *Guidry* 909 S.W.2d at 585. An improper cumulation order is, in essence, a void sentence, and such error cannot be waived. *Levy v. State,* 818 S.W.2d 801 (Tex. Crim. App. 1991). We sustain appellant's third issue and

16

reform the judgment to delete the cumulation order. Appellant's sentences are to run concurrently.

## 12. Expert Pathologist

In his fourth issue, appellant argues the trial court erred by completely excluding the testimony of the defense expert pathologist, Dr. Carlos Mattioli. Mattioli was board certified in both clinical and anatomical pathology. He served as Director of Laboratories at Mission Hospital, Mission, Texas. Mattioli performed over 500 autopsies. Appellant argues that while Mattioli was not perfect, he was board certified and could have impeached Farley's nebulous conclusions, thus allowing appellant to present a defense, citing *Negrini v. State*, 853 S.W.2d 128, 130 (Tex. App.–Corpus Christi 1993, no pet.)*. Negrini* sets out general standards for expert witness qualifications which we address below. *See id.* From several federal and state cases, appellant argues for his fundamental right to present witnesses. *See Chambers v. Miss*., 410 U.S. 284, 302 (1973) (few rights are more fundamental than that of an accused to present witnesses in his own defense; in the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence). A court should not mechanistically apply rules of evidence to defeat the ends of justice where constitutional rights directly affecting the ascertainment of guilt are implicated. *Id.* Appellant further asserts that the right to present a defensive theory is constitutional, and that rules of evidence must be flexible and must sometimes bend to the due-process rights of the defendant, citing *Alonzo v. State*, 67 S.W.3d 346, 359 (Tex. App.–Waco 2001, pet. dism'd.) (decision to admit otherwise inadmissible evidence because of due-process concerns is made on a case-by-case). Here, appellant argues,

17

Mattioli could have possibly impeached Farley's speculative conclusion that Ortega may have been strangled because the State's expert could not rule it out. The impeachment by Mattioli, if allowed, would have raised other possible causes of death.

Appellant claims he was denied the benefit of a defensive theory raising reasonable doubt, citing *Davis v. Alaska*, 415 U.S. 308, 317 (1974) (jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on witness's testimony which provided "a crucial link in the proof . . ."). From *Robinson* and *Thomas*, appellant argues that great latitude should be allowed a defendant in showing any fact which would establish bias, motive or ill feeling on the part of any witness for the State. *See Thomas v. State*, 669 S.W.2d 420, 423 (Tex. App.–Houston [1st Dist.] 1984, pet. ref'd.) (citing *Robinson v. State*, 550 S.W.2d 54, 59 (Tex. Crim. App. 1977)); *see also Virts v. State*, 739 S.W.2d 25, 29 (Tex. Crim. App. 1987) (the trial judge should always allow the accused great latitude to show any relevant fact that might tend to affect the witness's credibility).

Appellant further contends that a person may testify absent degrees in chemistry or medicine when the expert had certification and experience in an area again citing *Negrini*, 853 S.W.2d at 130. *Negrini* reiterates, however, that the trial court maintains discretion when determining whether a witness has been qualified as an expert. *Id.* Appellant cites other authority allowing the testimony of an expert who is not certified based upon practical experience. *See Gates v. State*, 24 S.W.3d 439, 444 (Tex. App.–Houston [1st Dist.] 2000, pet. ref'd.). In *Gates*, the appellate court held that officer Mayes's experience with suicides, both while working in a funeral home, and as a peace officer, resulted in a specialized knowledge of suicides that would help the trier of fact

18

understand the evidence regarding whether it is an usual occurrence for a person who commits suicide to shoot herself in the back of the head. *Id.* As we discuss below, appellant did not demonstrate to the trail court that Mattioli had any experience with strangulations or decomposed bodies.

### 13. Standard of Review

A trial judge's ruling on admissibility of expert testimony is reviewed under an abuse of discretion standard. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). The Texas Rules of Evidence set out three separate conditions regarding admissibility of expert testimony. *Vela v. State*, 209 S.W.3d 128, 130-31 (Tex. Crim. App. 2006). First, Rule 104(a) requires that preliminary questions concerning the qualification of a person to be a witness are be determined by the court. *Id.* Second, Rule 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." *Id.* (citing TEX. R. EVID. 702). And third, Rules 401 and 402 render testimony admissible only if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *Id.* (citing TEX. R. EVID. 401, 402).

These rules require a trial judge to make three separate inquiries, which must all be met before admitting expert testimony: "(1) the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case." *Id.* at 131. These conditions are

19

commonly referred to as: (1) qualification, (2) reliability, and (3) relevance. *Id.*

A witness must first have a sufficient background in a particular field, but a trial judge must then determine whether that background "goes to the very matter on which [the witness] is to give an opinion." *Id.* (citing *Broders v. Heise* 924 S.W.2d 148, 153 (Tex. 1996) (citing *Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106 (5th Cir. 1991)); *see also Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 719 (Tex. 1998) ("Just as not every physician is qualified to testify as an expert in every medical malpractice case, not every mechanical engineer is qualified to testify as an expert in every products liability case.") The proponent of the testimony has the burden to show that the expert "possesses special knowledge as to the very matter on which he proposes to give an opinion." 2 RAY, TEXAS LAW OF EVIDENCE: CIVIL AND CRIMINAL § 1401, at 32 (Texas Practice 3d ed. 1980); *Matson v. State*, 819 S.W.2d 839, 851 (Tex. Crim. App. 1991).

Dr. Mattioli admitted he was not a forensic pathologist. Forensic pathology is a sub-speciality of pathology. Mattioli practiced in the area of anatomical pathology for a local hospital, not as a forensic pathologist. He stated his autopsies were conducted in the same manner as the State's expert Farley. However, Mattioli did not see the victim's body. He didn't or would not consider the police report. Mattioli had not performed autopsies on strangulations, de-composed bodies, or any other criminal cases including homicides in over twenty years. While the witness had given deposition testimony, he had not testified as an expert in a trial prior to this case. His last formal training in performing autopsies was over thirty years earlier, although he studied and attended medical conferences regularly.

We find that the trial court could have reasonably concluded that the defense did not demonstrate that Mattioli was sufficiently qualified in the sub-speciality of forensic

20

pathology. *See Matson*, 819 S.W.2d at 851.

Further, the trial court could have reasonably concluded that Mattioli's methodology, without accessing or viewing the corpse, was not scientifically reliable.[3] The proponent of scientific evidence bears the burden of proving to the trial court, by clear and convincing evidence, that the evidence is sufficiently relevant and reliable to assist the jury in determining a fact in issue. *Layton v. State,* 280 S.W.3d 235, 241 (Tex. Crim. App. 2009) (citing, *inter alia*, *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992)). The court also identified a nonexclusive list of factors that could influence a trial court's determination of reliability. These include: (1) the extent to which the theory and procedure are accepted as valid by the relevant scientific community; (2) the technique's potential rate of error; (3) the availability of experts to test and assess the method or technique; (4) the clarity and precision with which the underlying scientific premise and approach can be explained to the court; and (5) the knowledge and experience of the person(s) who applied the methodology on the occasion in question. *Id.*

Appellant cites to *Kelly* and *Negrini* to argue that it was the trial court's burden to undertake a full determination of reliability. *See Negrini* 853 S.W.2d at 130; *Kelly*, 787 S.W.2d at 548;[4] While in one sense this is correct, the burden of persuasion is upon the proponent of the expert testimony. *Layton,* 280 S.W.3d at 241. Once the proponent proffers her expert, then the trial court would undertake its responsibility. *Kelly* stated, "We need not decide today what burden of persuasion is applicable under Texas Rule of Criminal Evidence 702 when the scientific evidence proffered is not truly 'novel.'" *Kelly*,

---

[3] Appellant argues that Mattioli's techniques were never allowed into testimony. However, as we noted infra, that is the burden of the proponent of the expert to establish reliability.

[4] Appellant's pin point cite is inaccurate.

787 S.W.2d at 573. *Kelly* did hold that in the case of novel evidence, the burden was on the proponent. *Id.* *Negrini* held that the burden of establishing a witness's qualification as an expert lies on the party seeking to offer that witness's testimony. *Negrini,* 853 S.W.2d at 131. We reject appellant's argument about the burden of persuasion.

We conclude that the trial court did not abuse its discretion by finding either the defense expert was not proven to be qualified or his methods reliable, or both. *See Weatherred*, 15 S.W.3d at 542.

## 14. Sudden Passion Instruction

In his final issue, appellant contends the trial court erred by refusing to give a sudden passion instruction during the guilt phase on the third count of tampering. He acknowledges the change in the law beginning September 1, 1994, making sudden passion a punishment phase instruction in a murder case. *See* TEX. PENAL CODE ANN. § 19.02(d).

## 15. Standard of Review

The trial judge has an absolute sua sponte duty to prepare a jury charge that accurately sets out the law applicable to the specific offense charged. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). Issues that involve diminished culpability, but not acquittal in the form of lesser-included-offense jury instructions, need not be submitted sua sponte if neither side requests such an instruction. *Id.*

## 16. Discussion

Appellant argues that although sudden passion is now a punishment issue with the burden placed upon the defendant, the law remains that the instruction must be given if there is some evidence rasing the issue. Appellant cites *Trevino v. State*, 100 S.W.3d 232,

238 (Tex. Crim. App. 2003).  It is true this authority states a sudden passion charge should be given if there is some evidence to support it, even if the evidence is weak, impeached, contradicted, or unbelievable. *Id. Trevino* stated that the previous standard for submission of the charge is now the same as it was before the law change placing the sudden passion charge in the punishment phase. *Id.*  This authority, however, does not support appellant's contention that the instruction should be given in the guilt phase.

Appellant further argues that the charge should be given because it deals with the knowledge element in that appellant had to know that he committed murder or aggravated assault.  According to the argument, appellant may have simply panicked when he first hid the body and the subsequent conduct was a continuation of the sudden passion.

The State notes that appellant cites no legal authority supporting his request for the charge in the guilt phase.  *See* TEX. R. APP. P. 38.1(i). We agree with the State that since 1994, the issue of sudden passion is given to the jury at the punishment phase of trial and then is given in connection with a murder charge, not a tampering charge. *See* TEX. PENAL CODE ANN. § 19.02(d).  We overrule appellant's fifth issue.

### 17. Conclusion

We reform the judgment to delete the cumulation order.  The judgment and sentence, as reformed, is affirmed.

DON WITTIG
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).
Memorandum Opinion delivered and
filed this the 17th day of September, 2009.